PELL, Circuit Judge.
This is a direct appeal from an order of a three-judge panel Bankruptcy Court, 7 B.R. 814, which discharged the defendant-appellant Thorp Finance Company’s (Thorp) non-possessory, nonpurchase-money security interest in specific items of household property and goods of the plaintiffs-appellees Wil *469 lis and Jacqueline Gifford pursuant to 11 U.S.C. § 522(f)(2). The issue on appeal is whether Congress intended § 522(f)(2) to apply to security interests acquired prior to November 6, 1978, the date of enactment of the Bankruptcy Reform Act, and whether such retroactive application would be constitutional.[1]
I.
The facts were stipulated by the parties below and are not in dispute. On October 4, 1978, Thorp entered a contract with the Giffords pursuant to which Thorp lent the Giffords $2,933.89 (exclusive of finance costs) in exchange for a promise of repayment and a nonpossessory, nonpurchase-money security interest in certain specific items of household furniture. The Giffords filed a petition in bankruptcy on June 9, 1980, in which they claimed exemption under § 522(d)(3) of the Bankruptcy Act for up to $200 in value for each item of their household property. They also filed a complaint under § 522(f)(2) to avoid Thorp’s security interest in the furniture. Thorp opposed the complaint on the grounds that application of § 522(f)(2) to pre-enactment liens would be unconstitutional.
The complaint was heard by a panel of three bankruptcy judges. That panel ruled that retroactive application of § 522(f)(2) passed constitutional muster. The court relied heavily on the legislative history of the Act, and inferred an intent to have § 522(f)(2) apply retroactively from the clear expression of the remedial legislative purpose. The court also noted the general presumption of constitutionality of statutes, and determined that because § 522(f)(2) was limited to particular categories of exempted property it was protected by that presumption. Thorp appealed from that decision. The United States requested leave to intervene which was granted by this court on May 28, 1981.
II.
Thorp asserts on appeal that the court below erred both in determining that it was the intent of Congress that § 522(f)(2) apply retroactively, and also in determining that such application is constitutional. It contends that retrospective application of § 522(f)(2) would violate the “taking” clause of the Fifth Amendment,[2] and that the statute should therefore be construed *470 prospectively only, in light of the well-settled canon of construction that statutes not be construed to violate the Constitution if any other possible construction is available.
In NLRB v. Catholic Bishop, 440 U.S. 490, 99 S.Ct. 1313, 59 L.Ed.2d 533 (1979), the Supreme Court emphasized the proper mode of analysis of a Congressional enactment which is claimed to be unconstitutional. The Catholic Bishop Court had before it the question of whether lay teachers in church-operated schools were within the jurisdiction of the NLRB. The Court found that neither the language nor the legislative history of the National Labor Relations Act disclosed “an affirmative intention . . . clearly expressed,” that the NLRB have such jurisdiction. Absent such clear expression of Congressional intent to bring teachers within the NLRB’s jurisdiction, the Court declined to construe the Act in a manner that would require the resolution of “difficult and sensitive questions arising out of the guarantees of the First Amendment Religion Clauses.” 440 U.S. at 507, 99 S.Ct. at 1322. We turn first, therefore, to examination of whether retroactive application of § 522(f)(2) would give rise to such serious constitutional questions under the Fifth Amendment.
III.
The Constitution confers broad powers upon Congress to establish “uniform Laws on the subject of Bankruptcies.” U.S. Const. art. I, § 8, cl. 4. Congress has acted under this broad grant to enact various statutes which have applied to rights which predated their enactment. See, e.g., Hanover National Bank v. Moyses, 186 U.S. 181, 22 S.Ct. 857, 46 L.Ed. 1113 (1902) (Bankruptcy Act of 1898 discharged plaintiff’s 1892 judgment against debtor); In re Prima Co., 88 F.2d 785 (7th Cir. 1937) (Congress intended Bankruptcy Code to confer on bankruptcy courts the power to issue trustee certificates with priority over existing mortgages).
The Bankruptcy Reform Act of 1978, a comprehensive revision of the entire bankruptcy system, was enacted in the exercise of this broad bankruptcy power. It applies to many rights and transactions which took place before its enactment, saving only those cases commenced under the old bankruptcy law. See, e.g., 11 U.S.C. § 365(b)(2) (invalidates bankruptcy clauses in executo-ry contracts and unexpired leases); 522(e) (makes contractual waivers of exemptions unenforceable by unsecured creditors); 524(c) (contractual reaffirmations of debts unenforceable in some circumstances).
Courts have acknowledged the scope of the bankruptcy power as extending to all legislation regarding the discharge of contractual debts and distribution of the debt- or’s assets. See, e.g., Kuehner v. Irving Trust Co., 299 U.S. 445, 451, 57 S.Ct. 298, 301, 81 L.Ed. 340 (1937); Hanover National Bank, 186 U.S. at 186, 22 S.Ct. at 859. It is also settled, however, that the bankruptcy power is not without limitation, but rather is subject to the constitutional limits of the Fifth Amendment. Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 589, 55 S.Ct. 854, 863, 79 L.Ed. 1593 (1935); Rodrock v. Security Industrial Bank, 642 F.2d 1193, 1197 (10th Cir. 1981), prob. juris. noted, - U.S. -, 102 S.Ct. 969, 71 L. Ed.2d 108 (1981); In re Penn Central Transportation Co., 494 F.2d 270, 278 (3d Cir. 1974), cert. denied, 419 U.S. 883, 95 S.Ct. 147, 42 L.Ed.2d 122. The focus of our inquiry at this juncture must be whether application of § 522(f)(2) to pre-enactment liens presents a significant risk of overstepping those constitutional limitations.
In Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935), the Supreme Court found that the Frazier-Lemke Act of 1934, which by its terms applied retroactively, conflicted with the Fifth Amendment, and was therefore void. The Act was designed to save family-owned farms from foreclosure by permitting a debtor to obtain a five-year stay of state foreclosure proceedings, to remain on the farm during the stay if he paid a reasonable rent, and to satisfy the mortgagee’s claim at any time within the five-year period by paying the mortgagee the appraised value of the property.
*471 The Radford Court noted the broad power of Congress to discharge a debtor’s personal obligations, but concluded:
the effect of the Act here complained of is not the discharge of . . . personal obligation. It is the taking of substantial rights in specific property acquired by the Bank prior to the Act.
The province of the Court is limited to deciding whether the . . . Act ... as applied has taken from the Bank without compensation, and given to Radford, rights in specific property which are of substantial value. ... As we conclude that the Act as applied has done so, we must hold it void. For the Fifth Amendment commands that, however great the Nation’s need, private property shall not thus be taken even for wholly public use without just compensation.
295 U.S. at 589-90, 601-02, 55 S.Ct. at 863-64.
A substantial number of courts, including the only court of appeals to rule on the issue now before us, have applied the Rad-ford rationale to invalidate § 522(f)(2). See, e.g., Rodrock v. Security Industrial Bank, 642 F.2d 1193 (10th Cir. 1981), prob. juris, noted, - U.S.-, 102 S.Ct. 969, 71 L.Ed.2d 108 (1981); Cashion Community Bank v. Carnes, 8 B.R. 599 (Bkrtcy.W.D. Okla.1981); In re Pape, 7 B.R. 443 (Bkrtcy. N.D.Fla.1980); Malpeli v. Beneficial Finance Co., 7 B.R. 508 (Bkrtcy.N.D.Ill.1980); Oldham v. Beneficial Finance Co., 7 B.R. 124 (Bkrtcy.D.N.M.1980); Pierce v. Oklahoma Health Services Federal Credit Union, 4 B.R. 671 (Bkrtcy.W.D.Okla.1980); Hawley v. Avco Financial Services, 4 B.R. 147 (Bkrtcy.D.Or.1980). A similar number of district courts have upheld the validity of the section, relying primarily on an expansive conception of the bankruptcy power, and a due process, rather than a takings, analysis. See Note, Constitutionality of Retroactive Lien Avoidance Under Bankruptcy Code Section 522(f), 94 Harv.L.Rev. 1616, 1621 & nn. 36-12 (1981).
In Rodrock, the U.S. Court of Appeals for the Tenth Circuit was faced with precisely the issue presented here, and determined that under Radford, § 522(f) was unconstitutional. That court reasoned:
In the instant cases, the creditors acquired rights in specific property prior to the enactment of the Reform Act, and, under Radford, these vested rights cannot be taken from the creditor for the benefit of the debtor. It should be noted that, in the instant cases, there would be a complete taking of the secured creditors’ property interest.
642 F.2d at 1197. The Rodrock court was also faced with the argument raised by the debtors here, that Radford has been discredited by a series of subsequent Supreme Court decisions. As the Giffords point out, Radford did not expressly rely on the taking clause of the Fifth Amendment, although the language of the opinion of the Court would seem to so indicate. Subsequent Supreme Court cases have seemed to treat Radford as a substantive due process case, and are silent on the taking issue. Wright v. Union Central Life Insurance Co., 311 U.S. 273, 61 S.Ct. 196, 85 L.Ed. 184 (1940); Wright v. Vinton Branch, 300 U.S. 440, 57 S.Ct. 556, 81 L.Ed. 736 (1937); see Helvering v. Griffiths, 318 U.S. 371, 400-01 n.52, 63 S.Ct. 636, 652 n.52, 87 L.Ed. 843 (1943). While these later cases do indeed circumscribe the application of Radford, and erode the substantive due process test it arguably applied, it is also clear that, “The Supreme Court . . . has never repudiated the principle that the value of a security interest in specific property is a fifth amendment property right that cannot be taken unless just compensation is given.” Note, 94 Harv.L.Rev., supra, at 1624. The Supreme Court has continued to cite Rad-ford for the proposition that the Government may not take a property interest without just compensation. See, e.g., Armstrong v. United States, 364 U.S. 40, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960). It is also worthy of note, although perhaps not conclusive, that Congress apparently considered Radford still vital at the time of the passage of the Bankruptcy Reform Act. *472 S.Rep.No.95-989, 95th Cong., 2d Sess. 49, 76, reprinted in [1978] U.S.Code Cong. & Ad.News 5787, 5835, 5862 (citing Radford with approval); H.R.Rep.No.95-595, 95th Cong., 2d Sess. 361, reprinted in [1978] U.S. Code Cong. & Ad.News 5963, 6317. We therefore agree with the Rodrock court that subsequent Supreme Court decisions, “may well refine . . ., but ... do not destroy the fundamental teaching of Radford that Congress may not under the bankruptcy power completely take for the benefit of a debtor rights in specific property previously acquired by a creditor.” 642 F.2d at 1198.
The continuing vitality of Radford raises substantial and significant questions about the constitutionality of any retroactive application of § 522(f)(2). Specifically this court would be required to determine whether the liens avoided are compensable property rights within the meaning of the taking clause of the Fifth Amendment; whether avoidance of the liens constitutes a sufficient deprivation of the creditor’s property to invoke the protections of the Fifth Amendment; and whether substitution of an unsecured claim for the creditor’s rights in specific property is sufficient compensation. Because we see no escape from these serious Fifth Amendment questions if § 522(f)(2) is applied to liens which attached under state law to specific property prior to the enactment date of the Bankruptcy Reform Act, we turn to an examination of the Act to decide whether it must be read to so apply, and thus require resolution of the constitutional question raised by Thorp.
IV.
The language of § 522(f)(2) does not expressly address retroactive application of the provision. There is thus no explicit “clear expression of an affirmative intention of Congress,” Catholic Bishop, 440 U.S. at 504, 99 S.Ct. at 1320, that preenactment liens be avoided by the section. As the debtors and the Government properly point out, however, the broad sweep of the Reform Act affects many rights and obligations which arose before the enactment date, and expressly excepts from coverage only cases commenced under the old Bankruptcy Code. Examination of the legislative history is therefore necessary to determine whether the broad sweep of the Act was intended to include the avoidance of pre-enactment liens under § 522(f)(2).
The Bankruptcy Reform Act of 1978 was the product of extensive study and debate. Among its purposes was provision of more effective relief to consumer debtors, whose ranks had swelled substantially since 1938, the last major revision of the Act. H.R. Rep. 95-595, 95th Cong., 2d Sess. 4, reprinted in [1978] U.S.Code Cong. & Ad.News 5963, 5966; see In re Smith, 640 F.2d 888 (7th Cir. 1981).
Among the methods chosen to provide this protection were the lien avoidance provisions of § 522(f)(2), which permit a debtor to avoid the fixing of a lien on an interest of the debtor which would otherwise be exempt under § 522(b), if the lien is a non-possessory, nonpurchase-money security interest in certain types of property, including household furnishings and goods of the type at issue here. Although the legislative history is silent as to whether such avoidance is intended to apply to pre-enactment liens, the rationale for the provisions is set forth at length. Congress found that although the resale value of such household goods is negligible, their replacement cost is high. The lien’s primary value to the creditor is thus as a threat, used to coerce debtors into making payments they cannot afford in order to retain basic household necessities. Congress found that the widespread use of such liens, which were often obtained without debtor knowledge of the consequences, impaired the fresh start bankruptcy was intended to provide; it thus determined to allow the avoidance of such liens. H.R.Rep.No. 95-595, 95th Cong., 2d Sess. 126-127, reprinted in [1978] U.S.Code Cong. & Ad.News 5963, 6087-88.
Although the legislative purpose in enacting § 522(f)(2) is quite clear, there is no express indication in the legislative history that Congress intended to apply the section to vested property rights in exist *473 ence at the time of enactment. Nor is such an inference compelled from the legislative history. Rather, Congressional sensitivity to the Fifth Amendment limits of the bankruptcy power is reflected by repeated reference to the Radford decision, in both the House and Senate reports accompanying the Act, see supra. This demonstration of Congressional recognition of the limits of the bankruptcy power to deprive creditors of property rights, as well as the absence of any clearly expressed affirmative intention that § 522(f) apply to liens which had attached prior to the enactment of the Bankruptcy Reform Act compels the conclusion that Congress did not contemplate application of § 522(f)(2) to liens in existence prior to November 6, 1978.
The debtors and the Government nevertheless argue that the legislative history demonstrates the remedial and curative purpose of the enactment, and that limiting application of § 522(f)(2) to post-enactment liens would nullify the broad Congressional intent. Furthermore, they argue, if § 522(f)(2) does not apply to pre-enactment liens, there would be a statutory gap, whereby in a case filed after October 1, 1979, no bankruptcy law would cover creditors’ security interests which came into being before that date, because the old bankruptcy law was repealed as of that date, and that Congress could not have intended such a result.
The debtors and the Government first point out that the purpose of the statute is to remedy past abuses of such liens by creditors. They rely on McNair v. Knott, 302 U.S. 369, 371, 58 S.Ct. 245, 246, 82 L.Ed. 307 (1937), to establish the principle that such remedial legislation is presumed to apply retroactively in the absence of express limitation to prospective application. Thorp conversely relies on Greene v. United States, 376 U.S. 149, 160, 84 S.Ct. 615, 621, 11 L.Ed.2d 576 (1964), and South East Chicago Commission v. HUD, 488 F.2d 1119, 1122 (7th Cir. 1973), to establish a contrary canon: that in the absence of a clear mandate of the legislative body to the contrary, statutes generally are presumed to operate only upon acts subsequent to their passage. Rather than resort to weighing these conflicting canons of statutory construction to ascertain legislative intent, we find the proper mode of analysis in this situation to be determination whether the preservation of pre-enactment liens is a sufficiently strong interest that the legislature could not, in the absence of specific language, have intended to destroy it. See, Green-blatt, Judicial Limitations on Retroactive Civil Legislation, 51 Nw.U.L.Rev. 540, 550, 553.
As noted above, Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935), held that retroactive application of the FrazierLemke Act to destroy creditors’ property rights in land was unconstitutional. The debtors and the Government contend that this case differs from Radford in that the resale value of § 522(f) property is minimal, is not in reality relied upon as commercially valuable security, and therefore does not rise to the level of the “rights of substantial value” protected by the Radford Court. They argue such “quantification” is required for a Fifth Amendment taking analysis, and that unless property has sufficient dollar value, rights in it are not-protected. We disagree. The fact that the value of § 522(f)(2) items may be less than the debt they secure does not make the security interest worthless, and it is the value of that right which is at issue, not the worth of the collateral. Creditors take security to insure repayment, not primarily to substitute collateral for repayment. The fact that § 522(f)(2) creditors are perhaps more interested in repayment than in substitution of collateral than other creditors may be does not make them different from other creditors in any Fifth Amendment sense. A property right is of value regardless of the worth of the object in which it is held, and is protected from governmental appropriation by the taking clause of the Fifth Amendment. Hoops v. Freedom Finance, 3 B.R. 635, 6 B.C.D. 273, 276 (Bkrtcy.D.Colo. 1980), aff’d, Rodrock v. Security Industrial Bank, 642 F.2d 1193 (10th Cir. 1981), prob. juris, noted, - U.S.-, 102 S.Ct. 969, *474 71 L.Ed.2d 108 (1981). We find that the interest in preserving preenactment liens is a strong one which rises to constitutional magnitude. In the absence of express legislative intent to destroy such interests, we decline to believe retroactive application to have been within the contemplation of Congress.
Nor are we persuaded that limiting application of § 522(f)(2) to liens created after November 6, 1978, will create a statutory gap in the bankruptcy laws. But cf. Rodrock, 642 F.2d at 1196-97 (existence of gap means retroactive intent must be inferred). Such a gap would only exist if a provision similar to § 522(f)(2) had existed under the old bankruptcy act. Prior to October 1, 1979, there was no such provision, however, and thus giving § 522(f)(2) prospective effect only simply means that the power of avoiding liens under its provisions will take effect on October 1, 1979, and apply to all liens arising after that date. Liens created prior to that date will continue to be effective under state law — precisely as they were under the old Bankruptcy Act.
V.
Accordingly, in the absence of any clear expression of legislative intent to apply § 522(f)(2) retroactively, we decline to construe the section in a manner that would call upon the courts to resolve thorny and troublesome questions under the taking clause of the Fifth Amendment. We hold that § 522(f)(2) does not apply to liens which attached prior to November 6, 1978.[3] The judgment below is therefore
Reversed.

. Retroactive application is used in this opinion in the traditional sense that the statute purports to determine the legal significance of events prior to the date of its enactment. See Greenblatt, Judicial Limitations on Retroactive Civil Legislation, 51 Nw.U.L.Rev. 540, 544-45 (1956).
The debtors contend that Thorp is barred from raising the issue of statutory construction in this court but rather is limited to its constitutional challenge to § 522(f)(2), for two reasons. First, they assert that Thorp failed to raise the issue of statutory construction below; second, they rely on a stipulation between Thorp and the Giffords below, which stated that, “the sole question for the Court’s determination is the validity of defendant’s claim that 11 U.S.C. Sec. 5.22 F [sic] as applied to the defendant is unconstitutional.”
It is true as a general rule that a party is precluded from raising an issue for the first time in this court, see, e.g., Stern v. United States Gypsum, Inc., 547 F.2d 1329, 1333 (7th Cir. 1977), cert. denied, 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467. This is not such a case. Whether § 522(f)(2) is unconstitutional “as applied,” explicitly raises the issue of retroactive application, and the question is thus within the intendment of the stipulation. Although the issue of statutory construction could indeed have been more fully developed below, it was expressly considered and ruled upon by the Bankruptcy Court panel.
Furthermore, in light of the strong policy mandate, reemphasized by the Supreme Court in NLRB v. Catholic Bishop, 440 U.S. 490, 99 S.Ct. 1313, 59 L.Ed.2d 533 (1979), see further discussion, infra, that we construe statutes in a manner that, if possible, avoids constitutional questions, this case would at any rate fall within the exception to the Stern rule. See Crowell v. Benson, 285 U.S. 22, 62, 52 S.Ct. 285, 296, 76 L.Ed. 598 (1932); Murray v. The Schooner Charming Betsy, 6 U.S. (2 Cranch) 64, 118, 2 L.Ed. 208 (1804). That exception provides that issues not raised below may be reached “where, in exceptional cases, justice demands more flexibility.” 547 F.2d at 1333. We will, therefore, consider Thorp’s statutory construction arguments, as well as its constitutional challenge to the section.

. “[N]or shall private property be taken for public use, without just compensation.” U.S. Const. Amend. V.

. Chief Judge Cummings’ dissenting opinion suggests that no valid distinction may be drawn between a creditor on the one hand who took a lien immediately prior to enactment of the new Code, and on the other hand, one who took immediately thereafter, and one who took immediately subsequent to the effective date, since all had the opportunity subsequent to enactment to adjust to the new law. We agree that because post-enactment, pre-effective creditors had notice at the time credit was extended and their lien attached that the new Code would govern subsequent bankruptcies, even though the new Code was not technically effective, they should be treated the same as post-effective creditors. See Rodrock, 642 F.2d at 1196 n.3, Dotson v. Bradford, 6 B.R. 741 (D.Ct.D.Nev.1980). However, because a pre-enactment lienor has a property interest which is valid under the Code-at the time of its attachment, and did not have notice of the impending effectiveness of the new Code, treating him similarly raises the spectre of an unconstitutional taking, as detailed in the majority opinion.
The dissent further contends, relying on In re Prima, 88 F.2d 785 (7th Cir. 1937), that Congress’ power to change the bankruptcy laws was an implied term of the contract, and that Thorp’s property right was therefore somehow contingent, and subject to destruction in the event of change of the Code. The Prima case has no application here, for it involved the contractual question of ordering of priorities, not the destruction of a vested property right. Furthermore, as the Prima court repeatedly stressed, the property rights of the lienors were not impaired by issuance of the trustee certificates, because there was ample security even after issuance of the certificates to satisfy all secured claims. 88 F.2d at 787. That result is in significant contrast to the instant case where it is undisputed that application of § 522(f)(2) to Thorp’s property interest would result in its destruction.
The dissent also suggests that the effect of § 522(f)(2) could be postponed for more than four years beyond the effective date by the additional extension of credit on the same financing agreement with the same security. As noted above, we believe any extension of credit subsequent to the enactment date of the new Code would be subject to its provisions, regardless of the form of the transaction, and that no such gap would be created by limiting the effect of § 522(f)(2) to post-enactment transactions.