**In re Gaylon Kieth O'NEAL, Carol Lee O'Neal, Debtors.**

**Gaylon Kieth O'NEAL, Carol Lee O'Neal, Plaintiffs,**

**v.**

**UNITED STATES of America, Farmers Home Administration, Defendant.**

**Adv. No. 81–0174(SE).**

**Bankruptcy No. 81–00305(SE).**

United States Bankruptcy Court, E. D. Missouri, Southeastern Division.

March 22, 1982.

Paul H. Berens, Cape Girardeau, Mo., for debtors-plaintiffs.

Wesley D. Wedemeyer, Asst. U. S. Atty., St. Louis, Mo., for defendant.

Wm. H. Frye, Cape Girardeau, Mo., Trustee.

## MEMORANDUM OPINION

ROBERT E. BRAUER, Bankruptcy Judge.

Debtors (on October 30, 1981) filed a Complaint To Avoid Lien, to avoid alleged nonpossessory, nonpurchase-money security interests in "certain tools or other mechanical instruments or appliances necessary to the practice of Debtors' trade, business or profession, and used in the practice thereof and implements of the trade of the Debtors". The Complaint came on for trial on January 29, 1982, when ruling was reserved.

27 separate items of property are sought, by the Complaint, to be relieved from Defendant's security interests.

Of these, the evidence adduced at the trial reflects that Defendant does *not* have or claim to have a lien or security interest in a 1978 Ford Pickup (4 Wheel Drive); and that Defendant *does* have a purchase-money security interest in a 1980 Case Tractor 990 Series, Serial No. 11094781, and in an AgTech Sprayer, 1980 model, 5002 Series, Serial No. 5002–3–05088. Thus, as to these three items, the relief sought will not be granted.

Debtors (Plaintiffs) bring their Complaint under 11 U.S.C. 522(f)(2)(B), which empowers a debtor to

"... avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is

.    .    .    .    . .

"(2) a nonpossessory, nonpurchase-money security interest in any—

.    .    .    .    .

(B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor."

Subsection (b) of 11 U.S.C. 522, referred to in Subsection (f), supra, permits a debtor to claim available State exemptions, or the exemptions provided for by subsection (d), the so-called federal exemptions.

Here, Debtor (Plaintiff) Gaylon Kieth O'Neal [1] claims, in his Schedule B–4 (Schedule of Exempt Property), filed on October 22, 1981, with his voluntary petition under Chapter 7 of the Bankruptcy Code, Missouri exemptions.[2]

In such Schedule, he claims, among other things:

"Sched. B–2(i), Tools or other mechanical instruments or appliances necessary to the practice of any trade, business or profession. V.A.M.S. 513.435(7) $36,075.00"

In his Schedule B–2(i) [referred to in Schedule B–4], Debtor O'Neal lists "Tractors, sprayer, mower, disc, blade etc. (see Security List with F.H.A.)", as having a value of $36,075.00.

513.435(7), V.A.M.S., referred to in O'Neal's Schedule B–4, exempts to one who is the head of a family [3],

"The books of professional men, and the tools or other mechanical instruments or appliances necessary to the practice of any trade, business or profession, and used in the practice thereof; ..."

The property, as to which O'Neal seeks to avoid Defendant's security interests,[4] as described in the Complaint, are:

---

1. Hereinafter referred to as O'Neal. Though the Complaint is filed by him, and by Carol Lee O'Neal, his wife, the trial proceeded on the theory, and the exemptions claims of Debtors are consistent therewith, that O'Neal is the sole owner of the property which is the subject matter of the Complaint.

2. He is entitled to claim exemptions provided for by Missouri. See 11 U.S.C. 522(b)(2)(A). Defendant makes no claim to the contrary.

3. O'Neal is the head of a family within the meaning of this exemption statute. The Defendant does not claim to the contrary.

4. *Exclusive* of the three items referred to in paragraph 3, page 14, supra.

| | Value [5] |
|---|---|
| Ford Tractor, 4600 Series, 1976, Serial # C488566 | $4,000 |
| Ford Tractor, 4000 Series, 1969, Serial # G 304491 | 3,500 |
| Meyers Sprayer, 400 gallons, 1966 | 1,500 |
| Meyers Sprayer, 400 gallons, 1970 | 1,500 |
| Burch Disc, 10', 1969 | 300 |
| John Deere Disc, 13', 1970 | 300 |
| Steel Bin Trailers (4), 80 Bushels | 1,600 |
| 2 Whl. Wd. Trailer, 80 Bushels | 100 |
| Shop Made Brush Rake | 450 |
| Box Hitch Carry-All, 3 pt. | 50 |
| JD Plow, 3/14', 1969 | 250 |
| Cooler, 600 Bushels, 1969 | 2,000 |
| PreEmergent Spray Rig, 3 pt. 110 Gal., 6 row 1977 | 350 |
| Bore (Peach Tree) Spray Rig, 1977 | 275 |
| JD Planter 400 #247, 4 row | 150 |
| Ford Cultivator, 4 row rear mount | 300 |
| Ford Tractor, 5600 Series, 1977, Serial # C539473 | 5,000 |
| Coontz Blade, Front Mount, 1977 | 1,000 |
| Woods Bush Hog, 9' Offset, 1977 | 900 |
| Cotey Disc, 10' | 150 |
| Rotary Hoe, 2 row, 3 pt. hitch | 50 |

O'Neal is 35, and since 1975 has been a farmer and peach grower. Primarily he's been a peach grower, his farming of row crops being of a coincidental nature, utilizing land, under his control, on which peach trees were not growing. He's been "around peaches" all of his life. All of the items of property described in the Complaint were in fact used in his farming/peach growing operation, and were necessary to be used in that operation.[6] None of these items was held by O'Neal for sale, barter or trade, and all were acquired for use in that operation.

At bankruptcy,[7] Debtors owned 40 acres of land, upon which their residence was situated, having acquired this real estate in 1977, financed by the Defendant. Since acquisition, the 40 acres were devoted primarily to the growing of peaches. Other acreage was leased, at bankruptcy, by Debtors, and utilized in the growing of peaches. The total acreage owned/leased by the Debtors, at bankruptcy, was 250 to 260 acres. The number of employees employed by O'Neal, in his peach-growing operation, varied with the season, the maximum number being 15, employed at harvest time (June-August).

By the time of trial, Debtors had moved from their homestead acreage, but O'Neal had 120 acres of other peach orchard land then under lease, which he intended to operate if the subject property could be retained by him, whether because the security interests were avoided, or by reason of some other satisfactory arrangement.

The question is, whether any of the property, referred to in paragraph 1, of page 3 of this opinion constitutes "implements, . . ., or tools, of the trade of the debtor" within the meaning of 11 U.S.C. 522(f)(2)(B), supra. If so, there doesn't seem to be any limit to the value of the property as to which Defendant's nonpossessory, nonpurchase-money security interests[8] may be avoided, under that Section, inasmuch as Missouri's exemptions in "tools of the trade" so-called is unlimited.

It should be noted, here, that Missouri's "tools of the trade" exemption (unlimited as to value) seems to be much more comprehensive than what is referred to in 522(f)(2)(B) as property as to which a security interest may be avoided. Missouri's 513.435(7) V.A.M.S. exemption is in "tools or *other mechanical instruments or appliances* necessary to the practice of any trade, *business or profession*, in contrast to the "implements, . . ., or tools, of the trade of

---

5. Evidence of value came from O'Neal.

6. The items include 4 Tractors. 4 are said to be needed during the heighth of the pruning, spraying, and harvest seasons.

7. Debtors' voluntary petition under Chapter 7 of the Bankruptcy Code was filed on October 22, 1981.

8. Defendant does not claim that any of its security interests are purchase-money security interests; nor does it claim to be in possession of any of the encumbered property. For the purpose of this opinion, I find and conclude that Defendant's security interests are nonpossessory, nonpurchase-money security interests.

the debtor" described in 522(f)(2)(B).[9] I think the difference is extremely important, and should be noted especially, because Debtor takes succor in *In re Seacord* (Bkrtcy.W.D.Mo., 1980) 7 B.R. 121, where Bankruptcy Judge Barker holds, in a 522(f)(2)(B) setting, that a specially-equipped Van, used by the Debtor, engaged in the *business* of selling low cost, high value automotive parts to service stations, automobile repair shops, and used car lots in the greater Kansas City area, to transport a full stock of merchandise to his customer's sites, is a "tool or instrument" within the meaning of 513.435(7) V.A.M.S., and an item of property as to which a security interest may be avoided under 522(f)(2)(B).

I am not enamored of *Seacord*, because an "instrument" is not enumerated as an item of property in 522(f)(2)(B), and, of greater importance, it seems to me, because Judge Barker doesn't recognize that the practice of a "business", included in the Missouri exemption statute,[10] is something different than the practice of a "trade". Thus, I do not perceive *Seacord* to be of persuasive authority.[11]

\* \* \* \* \* \*

Moreover, I believe *Seacord* substantially fails to consider that 522(f)(2) is not an exemptions statute, but is an avoidance, or a taking statute,[12] and fails to consider the legislative history and purpose of the Section and its Fifth Amendment constitutional implications.

■ The legislative history, in respect of the Section, convinces me that it is to be utilized by consumer debtors, wage earners who work for a living, to protect property, believed to be necessities of family life or essential to the earning of a living, of nominal (or, less that substantial) commercial value. The legislative history of the Section is ably and comprehensively set out in *In re Morris* (Bkrtcy.N.D.Ill., 1981) 12 B.R. 321, 7 B.C.D. 1336, in an exhaustive opinion by Bankruptcy Judge Merrick, and in detail in *In re Sweeney*, supra (footnote 12). It is found, also, in *In re Gifford*, 669 F.2d 468 (7 Cir., 1982) para. 68,549 CCH Bankruptcy Law Reporter.

Further, as *Morris* and *Sweeney* teach us, the avoidance of a security interest in property of substantial commercial value, as here, would pose grave Fifth Amendment Constitutional questions, a construction to be avoided particularly in light of the recorded legislative history which does not support or require such construction.[13]

Moreover, as *Sweeney* suggests, to permit of lien avoidance in a case of this kind would be to render the procurement of loans to finance repairs of commercially valuable personalty—or to refinance pur-

9. The portions of 513.435(7) V.A.M.S. which are underscored seem to me to embrace kinds of property which are not embraced by 522(f)(2)(B). Neither Missouri's exemptions statutes, nor the Bankruptcy Code, defines "implements", "tools", "mechanical instruments", "appliances", or "trade" or "business".

10. Missouri's exemption statute recognizes a difference between a "business", and a "trade", as even though its statute doesn't define those words they are used in the same statute as descriptive of property available to be claimed as exempt. If Missouri's legislature were want to equate "business", and "trade", in its exemptions statute, there obviously would not have been any need to utilize both words.

11. In the treatise *Collier on Bankruptcy*, 15th Ed., Vol. 3, Sec. 522.29, at page 522–68, the writers say "Even if the debtor chooses the State exemptions, this avoiding power applies, but only to property that is exempt under State law that is of the *same kind* as the property

allowed under those four paragraphs of Section 522(d)." (emphasis supplied)

12. With this difference in mind, worrying of the Constitutional implications of "a taking" of property of a substantial value, and worrying about the practical difficulties of procuring a loan to repair a delivery truck, or an over-the-road tractor, the Bankruptcy Court for the Eastern District of Wisconsin, in *In re Sweeney etc.* (Bkrtcy.W.1980) 7 B.R. 814, 6 B.C.D. 1377 (fn.4, 819, fn.4, 1380), would rule contrary to *Seacord.*

13. Such grave Fifth Amendment constitutional implications are properly to be considered, even though, here, an agency of the United States is the secured party, and the United States is not a "person" entitled to the protection of the Fifth Amendment. *In re Augustine* (W.D.Pa., 1980) 7 B.R. 565, aff'd (W.D.Pa., 1981).

chasemoney loans—virtually impossible: as, lenders would not be prone to make such a loan or effect such refinancing where its collateral were to consist of a nonpurchase security interest in such commercially valuable property but subject to being avoided by a Bankruptcy Code debtor. These practical, financing implications were given by the New Mexico Bankruptcy Court, in *In re Yparrea*, 16 B.R. 33 (Bkrtcy. Oct. 1981), as one of its reasons for construing "implements" and "tools of the trade", in 522(f)(2)(B) as hand tools and small implements, and excluding farm machinery large in size and valued at approximately \$30,000.[14]

Accordingly, it is my judgment that 522(f)(2)(B) is to be construed to permit the avoidance of a security interest in hand tools and small implements with only nominal commercial re-sale value; and that in this case only the 2 Wheel Wood Trailer (\$100), the Box Hitch Carry-All (3 pt.) (\$50), and the Rotary Hoe, 2 row, 3 pt. hitch (\$50), constitute such "implements, . . . and tools, of the trade" as to which Defendant's security interests may be avoided. Judgment upon the Complaint is being entered in accordance with this opinion.

Joseph R. Raggio, Baton Rouge, La., for debtor.

14. In *In re Augustine*, supra, where the lien sought to be avoided embraced farm equipment, or farm tools, of the value of \$11,800, Debtors were limited to the \$750 limit provided for [as an exemption in implements, . . . and tools, of the trade] by 522(d)(6).