LOGAN, Circuit Judge.
Harold Gregg Liming, an Oklahoma farmer, obtained a $15,000 loan from the Central National Bank of Enid, Oklahoma, in April 1980. Liming’s loan application stated that he had a net worth of $183,000 and total debts of $88,000. He pledged a John Deere tractor worth $30,000 as collateral.
Seventy-six days later, in June 1980, Liming gave Central National a revised financial statement. The impetus for the new statement is unclear, but it listed a net worth of only $33,000 and total debts of $264,000. Instead of calling its loan, Central National accepted a $3,000 payment on the existing debt and a renewal note on the balance at a lower rate of interest. Less than eight months later, in February 1981, Liming declared bankruptcy.
Central National’s complaint asked that Liming’s debt be held nondischargeable under 11 U.S.C. § 523(a)(2)(B), because it arose from a materially false statement of his financial condition. Liming argued that the debt was dischargeable and that Central National’s security interest in his tractor was avoidable under 11 U.S.C. § 522(f)(2)(B), because it was a lien on an “implement” of his trade exempt under *897 Oklahoma law. The bankruptcy court held that Liming’s debt to the bank was nondischargeable but that the lien on Liming’s tractor was avoidable, 22 B.R. 740. Both parties appealed directly to this court under 28 U.S.C. § 1293(b). By agreement of the parties, the cause was submitted without oral argument.
I
The federal Bankruptcy Code provides that:
“(a) A discharge under section 727 ... does not discharge an individual debtor from any debt—
(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—
(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor’s ... financial condition; or
(B) use of a statement in writing—
(i) that is materially false;
(ii) respecting the debtor’s ... financial condition;
(iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services, or credit reasonably relied; and
(iv) that the debtor earned to be made or published with intent to deceive; ...”
11 U.S.C. § 523(a) (emphasis added). Central National contends that Liming’s debt fell within subsection (2)(B).
Liming argues that the figures he provided only estimated his financial condition; therefore they were neither “materially false” nor made with an “intent to deceive.” But a statement need only be made with reckless disregard for the truth to make the underlying debt nondischargeable under § 523(a)(2)(B). Carini v. Mat-era, 592 F.2d 378, 380-81 (7th Cir.1979); In re Houtman, 568 F.2d 651, 655-56 (9th Cir.1978); 3 L. King, Collier on Bankruptcy 11523.09[5][b], at 523-61 (15th ed. 1981) [hereinafter cited as Collier']. Further, “[t]he debtor’s unsupported assertions of an honest intent will not overcome the natural inferences from admitted facts.” 3 Collier 11523.09[5][b], at 523-62; see also In re Moran, 456 F.2d 1030, 1030-31 (3d Cir.), cert. denied, 409 U.S. 872, 93 S.Ct. 201, 34 L.Ed.2d 504 (1972); In re Monsch, 18 F.Supp. 913, 915 (E.D.Ky.1937). Liming, within three months of obtaining a loan based on a financial statement showing a net worth of $183,000 and debts of $88,000, admitted to a net worth of only $33,000 and debts of $264,000. He cited no intervening events and offered no other adequate explanation for this remarkable shift in his financial status.
In holding Liming’s debt nondischargeable under § 523(a)(2)(B), the bankruptcy court necessarily found that Liming had made an intentionally false statement. This finding of fact must stand unless clearly erroneous. Bankruptcy Rule 8013; Carini, 592 F.2d at 380; see also In re Reid, 757 F.2d 230, 233 (10th Cir.1985). The determination is not clearly erroneous; the dramatic disparity in Liming’s figures alone showed at least a reckless disregard for the truth. See In re Archangeli, 6 B.R. 50, 52 (Bankr.D.Maine 1980).[1]
Liming contends that because Central National took a security interest in a tractor worth twice the amount of its loan, it cannot fairly be said to have relied on the figures he provided. See 11 U.S.C. § 523(a)(2)(B)(iii). But § 523(a)(2)(B) does not require that a creditor rely exclusively on the false financial statement. In re Garman, 625 F.2d 755, 756 n. 1 (7th Cir. 1980) (citing Carini, 592 F.2d 378), cert. denied, 450 U.S. 910, 101 S.Ct. 1347, 67 *898 L.Ed.2d 333 (1981). Partial reliance is enough. Id. A lender easily can rely on a financial statement and a security interest in making a loan. See In re Slohm, 10 F.Supp. 351, 354 (W.D.N.Y.1935). Such reliance is justified; as the facts demonstrate here, “excess” security can vanish rapidly. The bankruptcy court found that Central National relied on Liming’s financial statement. We do not find this determination clearly erroneous.
Liming asserts that, even if Central National relied on the financial statement when it issued the loan, it did not rely on the statement when it issued the renewal note — when it knew Liming’s correct finances. He also argues that, because Central National passed up its opportunity to call the loan, it is now either estopped or has waived its right to object to the false statement.
We reject these arguments as well. The renewal only maintained Liming’s initial debt, which was incurred in reliance on Liming’s initial false statement. It did not represent a new debt incurred without regard to the initial false statement. Cf. In re Ojeda, 51 B.R. 91, 92 (Bankr.D.N.M.1985) (debtor receives “fresh cash” based on second, false financial statement, after obtaining loan under initial correct statement; nondischarge granted for added debt because the creditor relied on second statement); In re Gadberry, 37 B.R. 752, 753 (Bankr.C.D.Ill.1984) (same). But see In re Archangeli, 6 B.R. at 52-53 (debtor obtains renewal after false statement but creditor found not to have relied on statement; creditor not allowed nondischarge). Neither estoppel nor waiver applies because there was no reason to think that the renewal note represented either a statement that Central National would not have nondischargeability rights if bankruptcy arose or that Central National had promised not to assert such rights. Cf. Fielder v. McKea Corp., 605 F.2d 542, 545-46 (10th Cir.1979) (decision of contractor to continue performance after discovering fraud is not waiver of right to sue for fraud absent express intention to do so). If anything, the issuance of the renewal note showed Central National’s great concern over Liming’s false financial statement. It represents its attempt to make the best of a bad situation. We will not hold that the bank should have called the loan when it discovered the falsity of the financial statement in order to maintain its right to rely on the falsehood. Central National should not be penalized for accepting part payment and extending the date by which the loan must be repaid in an apparent effort to keep Liming afloat. A different ruling would frustrate the purposes of the bankruptcy law.
We therefore affirm the ruling that Liming’s debt to Central National was nondischargeable under 11 U.S.C. § 523(a)(2)(B).
II
As the bankruptcy court correctly noted, a debtor may bring an action to avoid a lien under 11 U.S.C. § 522(f) even if the debt secured by that lien is declared nondisehargeable.[2] See In re Gantt, 7 B.R. 13, 14 (Bankr.N.D.Ga.1980). Liming argues that Central National’s security interest in his tractor can be avoided under § 522(f), which provides that:
“(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
(1) a judicial lien; or
(2) a nonpossessory, nonpurchase-money security interest in any—
*899 (B) implements, professional books, or tools, of the trade of the debtor

it

11 U.S.C. § 522(f)(2)(B) (emphasis added).
The first issue is whether the lien on Liming’s tractor impaired “an exemption to which the debtor would have been entitled.” The Bankruptcy Code provides a list of federal exemptions from the claims of unsecured creditors. 11 U.S.C. § 522(d). It also recognizes any exemptions that applicable state law provides. 11 U.S.C. § 522(b)(2). The debtor must choose between the state and federal provisions when claiming an exemption, see 3 Collier U 522.02, at 522-11, but may alter an improvident choice, id.
The pertinent federal exemption provides that a debtor may exempt an “aggregate interest, not to exceed $750 in value, in any implements, professional books, or tools, of the trade of the debtor____” 11 U.S.C. § 522(d)(6). The pertinent Oklahoma exemption provides that:
“A. Except as otherwise provided in this title and notwithstanding subsection B of this section, the following property shall be reserved to every person residing in the state, exempt from attachment or execution of every other species of forced sales for the payment of debts, except as herein provided:
5. Implements of husbandry necessary to farm the homestead;”
Okla.Stat.Ann. tit. 31, § 1.A.5 (West Supp. 1985).[3] Unlike the federal exemption, this state exemption has no dollar limitation.
The Oklahoma courts have held that a farm tractor is “an implement of husbandry” within the Oklahoma exemption. Davis v. Wright, 194 Okla. 451, 152 P.2d 921, 922 (1944) (construing prior version of the statute with virtually identical language). Central National tries to distinguish Davis by noting that it involved an attempted forced sale of a tractor passing through probate, which was needed to pay off estate debts. The tractor was the only means a widow would have had to work her probate homestead. But we see no significant distinction. As a federal court construing Oklahoma law, we must follow Davis and find that Liming’s tractor was an exempt item under 31 Okla.Stat. § l.A.5.[4] We therefore agree with the bankruptcy court that Central National’s lien on Liming’s tractor did “impair” a bankruptcy exemption to which Liming “would have been entitled,” as the bankruptcy exemptions are invoked in the avoidance provisions in 11 U.S.C. § 522(f).
Central National, however, contends that Liming’s tractor was not a protected “implement” under 11 U.S.C. § 522(f)(2)(B), because such “implements” include only those listed for exemption in § 522(d)(6), which contains a $750 value limitation.
The federal bankruptcy cases are divided over whether the avoiding authority for “implements” in 11 U.S.C. § 522(f)(2)(B) is limited solely to implements exempted under 11 U.S.C. § 522(d)(6). The cases limiting what can be avoided have differing approaches. See In re Thompson, 750 F.2d 628, 631 (8th Cir.1984) (all avoidances in § 522(f)(2) limited to “low value personal goods”); In re Nowak, 48 B.R. 290, 291-92 (W.D.Wisc.1984) (all avoidances in § 522(f)(2) limited to items listed in § 522(d)(3), (4), (6), and (9)); Flick v. United States, 47 B.R. 440, 442 (W.D.Pa.1985) (“implements” avoidance in § 522(f)(2) limited to $750 value in § 522(d)(6)); In re Bova, 44 B.R. 938, 939 (Bankr.E.D.Pa.1984) (§ 522(f)(2) avoidances limited to items listed in § 522(d)(3), (4), (6), and (9)); In re Alloway, 34 B.R. 423, 425 (Bankr.D.Or. 1983) (same); In re O’Neal, 20 B.R. 13, 15-17 (Bankr.E.D.Mo.1982) (“implements” *900 avoidance in § 522(f)(2) limited to small implements); In re Yparrea, 16 B.R. 33, 34 (Bankr.D.N.M.1981) (“tools of the trade” and “implements” avoidance in § 522(f)(2) limited to $750 value in § 522(d)(6)); In re Sweeney, 7 B.R. 814, 818-19 (Bankr.E.D. Wis.1980) (same), affd on other grounds sub nom. In re Gifford, 688 F.2d 447 (7th Cir.1982). The cases expanding what can be avoided also differ somewhat in their views. See Augustine v. United States, 675 F.2d 582, 584-86 (3d Cir.1982) (“implements” avoidance in § 522(f)(2) can be expanded to include those qualifying for § 522(d)(5) exemption);[5] Middleton v. Farmers State Bank, 41 B.R. 953, 954-55 (D.Minn.1984) (same); In re Walkington, 42 B.R. 67, 72-75 (Bankr.W.D.Mich.1984) (same); In re Schneider, 37 B.R. 747, 751 (Bankr.N.D.Ga.1984) (“tools of the trade” avoidance in § 522(f)(2) includes expensive car under state law exemption); In re Flake, 33 B.R. 275, 276 (Bankr.W.D.Wis. 1983) (“implements” avoidance in § 522(f)(2) includes large equipment under state law exemption without regard to value); In re Seacord, 7 B.R. 121, 123-24 (Bankr.W.D.Mo.1980) (same). See also 3 Collier ¶ 522.29[1], at 522-69 (stating that § 522(f)(2) allows avoiding a lien “to the extent that such an exemption is allowed by the state”).
Before the Bankruptcy Reform Act of 1978 took effect, state law determined which properties were exempt from unsecured creditors. See 11 U.S.C. § 24 (repealed 1978). But the debtor generally could waive the exemption by expressly subjecting the property to a lien. The 1978 Act retained the reference to state exemptions but added federal exemptions, providing the debtor with a choice between the two. Thus the Act continued “to recognize the States’ interest in regulating credit within the States, but enunciate[d] a bankruptcy policy favoring a fresh start.” H.R. Rep. No. 595, 95th Cong., 2d Sess. 126, reprinted in 1978 U.S.Code Cong. & Ad. News 5963, 6087.
In the spirit of allowing a fresh start, undoing the consequences of adhesion contracts, and countering creditors’ practices of using threats to repossess debtors’ household goods to obtain payment, Congress enacted § 522(f) to give debtors the right to avoid liens on exempt property.
“In addition, the bill gives the debtor certain rights not available under current law with respect to exempt property. The debtor may void any judicial lien on exempt property, and any nonpurchase money security interest in certain exempt property such as household goods. The first right allows the debtor to undo the actions of creditors that bring legal action against the debtor shortly before bankruptcy. Bankruptcy exists to provide relief for an overburdened debtor. If a creditor beats the debtor into court, the debtor is nevertheless entitled to his exemptions. The second right will be of more significance for the average consumer debtor. Frequently, creditors lending money to a consumer debtor take a security interest in all of the debtor’s belongings, and obtain a waiver by the debtor of his exemptions. In most of these cases, the debtor is unaware of the consequences of the forms he signs. The creditor’s experience provides him with a substantial advantage. If the debtor encounters financial difficulty, creditors often use threats of repossession of all of the debtor’s household goods as a means of obtaining payment.
In fact, were the creditor to carry through on his threat and foreclose on the property, he would receive little, for household goods have little resale value. They are far more valuable to the creditor in the debtor’s hands, for they provide a credible basis for the threat, because the replacement costs of the goods are generally high. Thus, creditors rarely repossess, and debtors, ignorant of the *901 creditors’ true intentions, are coerced into payments they simply cannot afford to make.
The exemption provision allows the debtor, after bankruptcy has been filed, and creditor collection techniques have been stayed, to undo the consequences of a contract of adhesion, signed in ignorance, by permitting the invalidation of nonpurchase money security interests in household goods. Such security interests have too often been used by overreaching creditors. The bill eliminates any unfair advantage creditors have.”
Id. at 126-27, 1978 U.S.Code Cong. & Ad. News at 6087-88 (footnotes omitted); see also United States v. Security Industrial Bank, 459 U.S. 70, 83-84, 103 S.Ct. 407, 415-16, 74 L.Ed.2d 235 (1982) (Blackmun, J., concurring).
Those courts that have interpreted the scope of the avoidance provisions of § 522(f) restrictively emphasize the references to “household goods,” to the items having “little resale value,” and the overriding power of the creditors.[6]
We do not accept that limitation, in part because the legislative history exhibits a partially pro-debtor stance, but principally because it would require us to read into the statute provisions contrary to its plain words. Section 522(f) permits the debtor, “notwithstanding any waiver of exemption,” to avoid any lien that impairs “an exemption to which the debtor would have been entitled under subsection (b)” on “implements” of the debtor’s trade. Id. § 522(f)(2)(B). We cannot read the reference to “subsection (b)” as pertaining only to subsection (b)(1), which encompasses the limited ($750) federal implements exemption, to the exclusion of (b)(2), which encompasses the state law exemptions. And, although the wording of the subsection (f) avoidances closely follows the wording of the subsection (d) exemptions, subsection (f) contains no express dollar limitations on the value of the items that the debtor may avoid. Indeed, that the wording is identical but for the dollar limitations suggests a deliberate omission.
Under different circumstances, we have refused to read the avoidance provisions of § 522(f) expansively. In In re Reid, 757 F.2d 230 (10th Cir.1985), we denied a debtor avoidance of a lien on paintings worth more than $180,000 as items held primarily for household use. In so holding we stressed that the purpose of the federal and Oklahoma exemptions is to avoid depriving debtors of the “necessities of life.” Id. at 236. But a tractor is a necessary “implement” of a farmer’s trade under any historical or common sense understanding of the term. We cannot place a more restrictive dollar value limitation on the “implement” exemption than state law imposes, given the wording of § 522.
Some courts have reasoned that a non-res'trictive reading of this avoidance section hurts debtors: If security interests in valuable implements like tractors are avoidable, lenders will refuse to make loans they otherwise might make. See In re O’Neal, 20 B.R. at 16-17; In re Sweeney, 7 B.R. at 819 n. 4. That may be so, but arguably farmers are more often already in debt to the lender, and, like the average consumer debtor, are subject to threats, pressures, and disadvantages similar to those mentioned in the legislative history. This policy decision is for Congress, not the courts.
Central National argued finally that Liming’s tractor was not used in Liming’s “trade,” as also required for avoidance un *902 der 11 U.S.C. § 522(f)(2)(B). It points out that, at the time of bankruptcy hearings, Liming farmed only 160 acres and worked full-time at Northrop Worldwide Aircraft Services in Enid. It further asserts that this particular tractor was larger than Liming needed to farm his quarter section.
Whether an implement is used in a bankrupt’s “trade” is a fact question based on an individual’s particular circumstances. See 3 Collier ¶ 522.15, at 522-44 to -45. A temporary abatement of work in a trade is not fatal to a claim for an exemption for tools or implements of that trade. Flick, 47 B.R. at 442-43; In re LaFond, 45 B.R. 195, 199-200 (Bankr.D.Minn.1984). Further, the statutory definition of “farmer” in 11 U.S.C. § 101(17)-(18) is not controlling for purposes of the tool of the trade provisions. Flick, 47 B.R. at 443; In re LaFond, 45 B.R. at 199-200. The bankruptcy court found that Liming’s tractor was used in his trade. We do not think this determination was clearly erroneous. Liming farmed the quarter section that he owned; he previously had been a full-time farmer on a much larger acreage.
AFFIRMED.

. Liming claims his action was not an outright fraud on Central National. But a general fraud inquiry is inapposite under § 523(a)(2)(B). Nondischarge under that subsection looks only to the material elements listed in that subsection. 3 Collier If 523.09, at 523-49. Section 523(a)(2)(B), which applies only to written statements, is a separate category of nondischarge, mutually exclusive from the general fraud inquiry necessary under § 523(a)(2)(A). In re Bedard, 19 B.R. 565, 567 (Bankr.E.D.Pa.1982); 3 Collier ¶ 523.08, at 523-35.

. Except when avoidance is expressly provided for, valid security interests are preserved in bankruptcy — even if against otherwise "exempted" property. See 11 U.S.C. § 522(c)(2); In re Augustine, 7 B.R. 565, 569 (Bankr.W.D.Pa.1980), rev'd on other grounds, 675 F.2d 582 (3d Cir. 1982); 3 Collier ¶ 522.27.

. The "homestead” is defined as the "residence of the family.” In re Wallace's Estate, 648 P.2d 828, 831-34 (Okla.1982).

. The Davis court stated that "statutes exempting property from forced sale for the payment of debts are to be given a reasonable construction to effect their intent and purpose and in case of doubt the doubt is to be resolved in favor of the exemption." 152 P.2d at 922.

. Section 522(d)(5) is a wild card provision, which allows an exemption for “any property" “not to exceed in value $400 plus any unused amount of the exemption provided under paragraph (1).” The “unused amount” refers to the $7,500 exemption given to debtors for real property or personal property that the debtor uses as a residence. See 11 U.S.C. § 522(d)(1).

. In re Thompson, 750 F.2d 628, 631 (8th Cir. 1984), did not permit lien avoidance of a security interest in 210 pigs worth $4,500. It found that the pigs were not held primarily for the personal, family, or household use of the farmer as required by § 522(f)(2)(A) for avoidance of liens on animals. Thus the case is distinguishable from the one before us, which involves a (2)(B) exemption and has no use requirement. Nevertheless, in reaching its conclusion the Eighth Circuit made statements contrary to the approach we take here: "In conclusion, we hold that only those personal goods necessary to the debtor’s new beginning and of little resale value fit the federal bankruptcy philosophy embodied in section 522(f)(2). We concur with the bankruptcy judge that the Thompsons’ pigs were not the sort of low value personal goods in which ‘adhesion contract’ security interests are taken." Thompson, 750 F.2d at 631 (footnote omitted).