**In re Charles Joseph ZWEIBAHMER Joy Elaine Zweibahmer, Debtors.**

**Charles Joseph ZWEIBAHMER Joy Elaine Zweibahmer, Plaintiffs,**

v.

**FARMERS HOME ADMINISTRATION, Defendant.**

**Bankruptcy No. 81–04265.**
**Adv. No. 81–0543.**

United States Bankruptcy Court,
N.D. Iowa, W.D.

Dec. 3, 1982.

Wil L. Forker, Sioux City, Iowa, for plaintiffs.

Asher Schroeder, Sioux City, Iowa, for defendant.

Findings of Fact, Conclusions of Law, and ORDERS Granting in Part and Denying in Part Debtors' Petition for Lien Avoidance, with Memorandum.

WILLIAM W. THINNES, Bankruptcy Judge.

The matter before the Court is the debtors' petition to avoid the fixing of a lien on the debtors' exempt property pursuant to 11 U.S.C. § 522(f). Trial was had on the matter at which Wil L. Forker, attorney for the plaintiffs, and Asher Schroeder, attorney for the defendant, were present. The parties were ordered to submit a stipulation of facts and copies of all agreements between the parties to the Court and the matter was taken under advisement. Having been fully advised, the Court now makes the following Findings of Fact, Conclusions of Law, and Orders.

### FINDINGS OF FACT

1. The debtors, Charles and Joy Zweibahmer, filed a Chapter 7 bankruptcy petition on June 30, 1981.

2. Prior to filing for bankruptcy, the debtors operated a farm business near Milford, Iowa. During the course of that business, the debtors obtained four operating expense loans from the Farmers Home Administration (herein the "FHA").

3. The debtors obtained those four operating expense loans by executing and delivering four promissory notes:

| Note | Amount | Date |
|------|--------|------|
| Note I | $33,500 | January 23, 1978 |
| Note II | $13,000 | December 14, 1978 |
| Note III | $11,800 | March 20, 1979 |
| Note IV | $ 6,000 | July 17, 1979 |

Each loan consisted of new credit, and the debtors' indebtedness to the FHA thus totaled $64,300.

4. On January 23, 1978, the debtors and the FHA entered into a security agreement (herein the "first security agreement") which listed *inter alia* certain farm equipment as security for the repayment of Note I. The first security agreement contained a "future advances" clause providing that the property identified by the security agreement would secure any subsequent advances to the debtors by the FHA. The first security agreement also contained an "after-acquired property" clause providing that equipment or inventory subsequently acquired by the debtors would also be security for existing indebtedness.

5. On the date of Note IV, the FHA and the debtors entered into another security agreement (herein the "second security agreement") which listed *inter alia* (i) all of the farm equipment listed in the first security agreement and (ii) additional items of farm equipment not listed in the first security agreement. The second security agreement contained "future advances" and "after-acquired property" clauses that were identical to those contained in the first security agreement.

6. Both the first and second security agreements contained language that indicated that the property identified by such agreements secured any previous indebtedness as well as any future advance.

7. At all times, the FHA's security interest was perfected by virtue of a financing statement on file with the Iowa Secretary of State.

8. Pursuant to 11 U.S.C. § 522(b), the debtors claimed the following property as exempt under Iowa Code § 627.6 (1981):

IH 400 gas tractor, Westendorf loader, Allis 8-row planter, 24' field cultivator, J.D. elevator, J.D. disk, 2 J.D. plows, sprayer, 1,000 gal. water barrel trailer, Kline 5th wheel trailer, grinder, truck box hoist, feeders, 24 farrowing crates, waterers, 2 gates, 16' auger, propane tank (500 gal.), gas heater, 300 bales straw, 200 bales hay, 200 bushel oats, miscellaneous small tools, welder, torch, tool box, fuel tank, etc.

The exemptions were not contested and the debtors are thus entitled to exempt such property from the estate. 11 U.S.C. § 522(*l*).

9. Pursuant to 11 U.S.C. § 522(f), the debtors filed a petition to avoid the FHA's lien on the exempt property listed above.

10. The FHA and the debtors stipulated that the FHA claimed a security interest in the following assets only:

IH 400 gas tractor, Westendorf loader, 24' field cultivator, J.D. elevator, two J.D. plows, Kline 5th wheel trailer, grinder, feeders, 24 farrowing crates, waterers, propane tank (500 gal.), and gas heater.

11. According to the debtors' schedules, the value of the assets in which the FHA claimed a security interest was approximately $3,530 as of the date of the bankruptcy petition. All of such assets were listed in both the first and second security agreements except for the 24' field cultivator.

12. The debtors and the FHA stipulated that the assets in which the FHA claimed a security interest are tools of the debtors' trade and that the FHA's security interest in those assets is a nonpossessory, nonpurchase-money security interest.

13. The FHA claimed that the debtors owed $35,981.65 in principal and $3,917.10 in accrued interest as of the date of the bankruptcy petition. Prior to filing their bankruptcy petition, the debtors had paid $28,318.35 in principal and $7,928.90 in interest to the FHA.

14. The FHA resisted the debtors' lien avoidance petition on the ground that its security interest was created prior to the

enactment of the Bankruptcy Reform Act of 1978 and that avoidance of such a security interest would violate the FHA's right to due process under the Fifth Amendment to the United States Constitution.

## CONCLUSIONS OF LAW

1. To the extent that the FHA's lien secures indebtedness incurred prior to the enactment of the Bankruptcy Reform Act of 1978, the debtors may not constitutionally avoid such lien on exempt property in which the debtors had an interest prior to such enactment date.

2. The debtors may constitutionally avoid the FHA's lien on their exempt property to the extent that such lien secures indebtedness incurred after the enactment of the Bankruptcy Reform Act of 1978 and to the extent that such lien attaches to the debtors' exempt property acquired after such enactment date.

## ORDERS

IT IS THEREFORE ORDERED that the debtors' petition to avoid the fixing of the FHA's lien on exempt property shall be, and hereby is, granted in part and denied in part.

IT IS FURTHER ORDERED that the FHA does not have a lien on any of the debtors' exempt personal property except as provided by this Order.

IT IS FURTHER ORDERED that the FHA's lien on the debtors' exempt property is avoided to the extent that that lien secures indebtedness incurred after the enactment date of the Bankruptcy Reform Act of 1978.

IT IS FURTHER ORDERED that the FHA's lien on the exempt property in which the debtors had an interest prior to the enactment of the Bankruptcy Reform Act of 1978 is not avoided to the extent that that lien secures pre-enactment indebtedness.

IT IS FURTHER ORDERED that the debtors and the FHA are to determine the actual apportionment of the pre-petition payments to the four promissory notes. The parties' agreement shall be submitted to the Court for its approval within thirty (30) days from the date of this Order.

IT IS FURTHER ORDERED that if the parties cannot agree to the correct actual apportionment of the pre-petition payments to the four promissory notes, the parties shall within thirty (30) days from the date of this Order submit such further records and evidence to the Court as will permit it to determine the correct apportionment.

## MEMORANDUM

The debtors, Charles and Joy Zweibahmer, operated a farm business near Milford, Iowa. During the course of that business, the debtors obtained four operating expense loans from the Farmers Home Administration (herein the "FHA") by executing four promissory notes. Those notes were given for the following amounts and on the indicated dates:

| Note | Amount | Date |
| --- | --- | --- |
| Note I | $33,500 | January 23, 1978 |
| Note II | $13,000 | December 14, 1978 |
| Note III | $11,800 | March 20, 1979 |
| Note IV | $ 6,000 | July 17, 1979 |

Each loan represented new credit and the debtors' indebtedness to the FHA thus totaled $64,300. Prior to filing for bankruptcy, the debtors had paid $28,318.35 in principal and $7,928.90 in interest to the FHA. The FHA claimed the debtors owed $35,981.65 in principal and $3,917.10 in accrued interest as of the date of the bankruptcy petition.

On the date of Note I, the debtors and the FHA entered into a security agreement (herein the "first security agreement") which listed certain farm equipment as security for the debt evidenced by Note I.[1] On the date of Note IV, the debtors and the FHA entered into another security agreement (herein the "second security agreement") which listed (i) all the farm equipment listed in the first security agreement

---

1. At all times, the FHA's security interest was perfected by virtue of a financing statement on file with the Iowa Secretary of State. Iowa Code §§ 554.9401, 554.9403 (1981).

and (ii) additional items of farm equipment not listed in the first security agreement. Both the first and second security agreements contained identical "future advances" clauses providing that the farm equipment listed in the security agreements would also secure any subsequent advance to the debtors by the FHA. Both the first and the second security agreements also contained identical "after-acquired property" clauses providing that equipment and inventory subsequently acquired would also be security for the debt. Further, both agreements contained language that indicated that the property identified in such agreements secured any previous indebtedness as well as any future advance.

The debtors filed a Chapter 7 bankruptcy petition on June 30, 1981, and claimed as exempt property some of the equipment listed in the first and second security agreements. As allowed by 11 U.S.C. § 522(b), the debtors chose the state exemptions which exempted from the estate a farmer's "tools" without any value limitation. Iowa Code § 627.6 (1981).[2] The exemptions claimed by the debtors [3] were not contested and all such property is thus exempted from the estate. 11 U.S.C. § 522(l).

Thereafter, the debtors filed a petition to avoid the fixing of the FHA's lien on the debtors' exempt property pursuant to 11 U.S.C. § 522(f).[4] The parties stipulated that the FHA claimed a security interest in the following assets only:[5]

IH 400 gas tractor, Westendorf loader, 24′ field cultivator, J.D. elevator, two J.D. plows, Kline 5th wheel trailer, grinder, feeders, 24 farrowing crates, waterers, propane tank (500 gal.), and gas heater.[6]

The parties further stipulated that the FHA had a nonpossessory, nonpurchase-money security interest in such assets and that such assets were tools of the debtors' trade. Except for the 24′ field cultivator, all of the above assets were listed on the first security agreement.[7]

## DIVISION I

The Bankruptcy Reform Act of 1978 (herein the "Code") allows debtors to avoid certain liens on certain categories of exempt property. 11 U.S.C. § 522(f) provides as follows:

... (T)he debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under (§ 522(b), if such lien is— ...

(2) a nonpossessory, nonpurchase money security interest in any ...

(B) implements, professional books, or tools, of the trade of the debtor...

It is clear that the first and second security agreements created a lien which impaired the exemptions to which the debtors were entitled under § 522(b). Further, the parties stipulated that the FHA had a nonpossessory, nonpurchase-money security inter-

2. The debtors filed their bankruptcy petition prior to the effective date of the new Iowa exemption scheme which placed value limitations upon such exempt property. *See* Iowa Const. Art. III § 26.

3. Pursuant to 11 U.S.C. § 522(b), the debtors claimed the following property as exempt under Iowa Code § 627.6 (1981):

IH 400 gas tractor, Westendorf loader, Allis 8-row planter, 24′ field cultivator, J.D. elevator, J.D. disk, 2 J.D. plows, sprayer, 1,000 gal. water barrel trailer, Kline 5th wheel trailer, grinder, truck box hoist, feeders, 24 farrowing crates, waterers, 2 gates, 16′ auger, propane tank (500 gal.), gas heater, 300 bales straw, 200 bales hay, 200 bushel oats, misc. small tools, welder, torch, tool box, fuel tank, etc.

4. In their lien avoidance petition, the debtors sought to avoid the FHA's lien on all the property listed in footnote 3, *supra.*

5. The debtors sought to avoid the FHA's lien on property in which the FHA did not claim a security interest in the parties' stipulation. As to such property, the FHA did not contest the lien avoidance and thus any lien it holds on such property is avoidable.

6. According to the debtors' schedules, the value of such assets on the date the debtors' bankruptcy petition was filed was approximately $3,530.

7. See discussion pp. 457–458, *infra,* regarding the 24′ field cultivator.

est in some of the assets[8] which the debtors claimed as exempt as tools of the debtors' trade.

The FHA argues that its lien cannot constitutionally be avoided as the security agreement which created the lien was executed prior to the enactment of the Code, November 6, 1978. This Court has previously held that liens created prior to the enactment of the Code cannot be avoided because such avoidance would violate a creditor's right to due process under the Fifth Amendment to the United States Constitution. *In re Hammer,* 9 B.R. 343 (Bkrtcy., N.D.Iowa 1981).[9] This Court has also held that liens created after the Code's enactment date but prior to the Code's effective date, October 1, 1979, can be avoided without violating any such due process rights. *In re Bruntz,* 10 B.R. 444 (Bkrtcy., N.D.Iowa 1981).

### DIVISION II

If the FHA's lien on the debtors' exempt property was created after the Code's enactment date, such lien could be constitutionally avoided. On the other hand, if the FHA's lien on the debtors' exempt property was created prior to the Code's enactment date, such lien could not constitutionally be avoided. That dichotomy directs the Court's inquiry to two questions:

1) When was the FHA's lien created?

2) What is the extent of that lien?

The FHA's lien in the equipment listed in the first security agreement was created prior to the Code's enactment date.[10] That lien was not affected by the execution of the second security agreement.[11]

The FHA claims a lien in the 24' field cultivator which was not listed on the first security agreement. The record does not indicate when the debtors acquired the 24' field cultivator. By virtue of the "after-acquired property" clause in the first security agreement, the FHA's lien would attach to the 24' field cultivator when the debtors acquired it. If the FHA's lien attached prior to the Code's enactment date, the lien on the 24' field cultivator could not be constitutionally avoided, whereas if the FHA's lien attached after the Code's enactment date, that lien could be constitutionally avoided. Because the record does not indicate when the debtors acquired the 24'

**8.** See the property listing in the text prior to footnote 6, *supra.*

**9.** A case presenting this issue is currently pending before the United States Supreme Court. *Rodrock v. Security Industrial Bank,* 642 F.2d 1193 (10th Cir.1981), appeal docketed *sub nom U.S. v. Security Industrial Bank,* —— U.S. ——, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982), probable jurisdiction noted 454 U.S. 1122, 102 S.Ct. 969, 71 L.Ed.2d 108 (1981).

**10.** A security interest is created when three events occur: (i) the collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral . . .; (ii) value has been given; and (iii) the debtor has rights in the collateral. Iowa Code § 554.9203(1) (1981). The FHA had a security interest in the property listed in the first security agreement on January 23, 1978, because all three specified events had taken place on that date.

**11.** This Court has recently held that when a creditor "flips" notes and security interests, the earlier note and security interest are released and the subsequent note and security interest are, in essence, new obligations. *In re Aver-*

*hoff,* 18 B.R. 198 (Bkrtcy., N.D.Iowa 1982). That decision rested on the parties' novation of the earlier note and security interest. A novation is dependent upon the intent of all parties to extinguish the old obligation and create a new obligation. The Court finds no such intent in this case and consequently finds no novation of the first security agreement by the execution of the second security agreement. Thus, the FHA's lien on the property listed in the first security agreement was created on January 23, 1978.

An analogous situation is presented when the creditor holds a purchase money security interest, lends the debtor more money, and then "flips" the entire debt into one note. The courts are split on whether the "flipping" causes all of the creditor's interest to become a nonpurchase money security interest, see *e.g., In re Hobdy,* 18 B.R. 70 (Bkrtcy., W.D.Ky. 1982); *In re Ashworth,* 16 B.R. 645 (Bkrtcy., C.D.Cal.1981), or if the creditor's security interest retains its purchase money character even though the debt was refinanced, see *e.g., In re Holland,* 16 B.R. 83 (Bkrtcy., N.D.Ohio 1981); *In re Gibson,* 16 B.R. 257 (Bkrtcy., D.Kan. 1981). Those decisions also rely upon the concept of novation as the determinative factor.

field cultivator, this Court assumes that the FHA's lien did not attach to it until after the Code's enactment date.[12] Accordingly, this Court holds that the FHA's lien on the 24' field cultivator is avoidable.

This Court holds that the FHA did have a lien on the following property as of the date of the Code's enactment:

IH 400 gas tractor, Westendorf loader, J.D. elevator, two J.D. plows, Kline 5th wheel trailer, grinder, feeders, 24 farrowing crates, waterers, propane tank (500 gal.), and gas heater.

That holding raises the ensuing question of the extent of the FHA's lien on such property on the date the Code was enacted.

The extent of a creditor's lien is defined by two factors, the value of the collateral and the extent of the underlying obligation or debt. Generally, a creditor may sell the collateral to satisfy an underlying indebtedness. Iowa Code § 554.9504(1) (1981). A creditor must account to the debtor for any proceeds of such a sale in excess of the amount of the underlying obligation and the debtor remains liable for any amount of the underlying obligation unsatisfied by such sale. Iowa Code § 554.9504(2) (1981). From these two concepts of a creditor's responsibility to account for a surplus and the debtor's liability for a deficiency, one can reason that the secured party's lien equals the value of the collateral or the amount of the underlying indebtedness, whichever is less.

These principles are relevant to a determination of the extent of the FHA's lien on the collateral as of the date the Code was enacted. Prior to that date, the FHA had loaned the debtors $33,500.[13] That amount is the greatest possible extent of the FHA's lien on the date of the Code enactment.[14] As a matter of definition, the FHA's pre-enactment lien was limited by the amount of the pre-enactment debt.

The FHA's proof of claim indicated the debtors had paid $28,318.35 in principal and $7,928.90 in interest to the FHA prior to the filing of the bankruptcy petition. However, the record contains no indication as to how such payments were apportioned among the four promissory notes. To the extent that those payments were applied to reduce the indebtedness under the first promissory note, the amount of the lien that is not constitutionally avoidable would be reduced.

Accordingly, this Court holds that the FHA's lien on the exempt property is not constitutionally avoidable to the extent that such lien secures any obligation remaining on the pre-enactment debt. If the present value of the collateral at issue herein is less than the amount of the remaining pre-enactment debt, the FHA's non-avoidable lien equals the value of the collateral.[15] If the

---

12. A defendant usually must prove each element of an affirmative defense. Fed.R.Civ.Pro. 8(c); *Vance v. Terrazas,* 444 U.S. 252, 100 S.Ct. 540, 62 L.Ed.2d 461 (1980). An essential element of the FHA's affirmative defense in this case is proof of when the lien in the asset was created. Because the FHA did not show when the lien in the 24' field cultivator was created, it has not proven its affirmative defense of unconstitutionality in regard to such asset.

13. The remaining three promissory notes for $13,000, $11,800, and $6,000 were executed after the Code's enactment date.

14. Part of the FHA's pre-enactment debt is the interest on the first promissory note notwithstanding the fact that some portion of such interest may have accrued after the Code's enactment date. *See* 11 U.S.C. § 506(b).

15. The value of the FHA's constitutionally protected lien is defined in part by the value of the collateral. Thus, the question will arise as to when the collateral should be valued if there is significant post-enactment appreciation or depreciation of such collateral. For purposes of deciding what date should be used to determine the collateral's value, the "taking" cases are relevant precedent. Under the Fifth Amendment to the United States Constitution, the property owner is entitled to the fair market value of the property on the date of the taking. *Almota Farmers Elevator and Warehouse Co. v. U.S.,* 409 U.S. 470, 474, 93 S.Ct. 791, 794, 35 L.Ed.2d 1 (1973); *U.S. v. 38.60 Acres of Land,* 625 F.2d 196, 198 (8th Cir.1980).

The taking of the FHA's pre-enactment lien would not occur on the date the Code was enacted because such lien could still have been enforced against the collateral until the debtor filed the bankruptcy petition. Moreover, the taking of the FHA's preenactment lien would not occur on the date the debtor filed the bankruptcy petition. Although the FHA was stayed

present value of the collateral at issue herein is greater than the amount of the remaining pre-enactment debt, the FHA's non-avoidable lien equals the amount of the remaining pre-enactment debt. To the extent that the FHA's lien on the exempt property secures any obligation remaining under the other three promissory notes,[16] such lien is avoidable. *See In re Gibson,* 16 B.R. 257, 264 (Bkrtcy., D.Kan.1981).

As the record is inadequate to allow the Court to determine the indebtedness remaining on Note I, the parties are to determine the amount of such remaining indebtedness and to submit their agreement concerning the same for court approval. If the parties are unable to agree, the FHA and the debtors shall submit additional records and evidence to the Court to allow the Court to accurately apportion the pre-petition payments to the four promissory notes.

from enforcement of its pre-enactment lien, the FHA could preserve the value of its lien by application to the Court for adequate protection against depreciation. 11 U.S.C. § 362(d). In addition, all of the FHA's lien would have been preserved if the debtors had not filed for § 522(f) lien avoidance. Therefore, if the FHA's pre-enactment lien could be avoided, the taking would occur on the date of the Court's order avoiding such lien. Consequently, for the purpose of determining the extent of the FHA's pre-enactment lien, the collateral to which such lien attached is valued as of the date of this Court's order regarding the lien avoidance.

16. *I.e.,* the notes for $13,000, $11,800 and $6,000.