**In the Matter of Allen M. SCHNEIDER, Debtor.**

**Allen M. SCHNEIDER, Plaintiff,**

v.

**FIDELITY NATIONAL BANK, Defendant.**

**Bankruptcy No. 82–02744A.
Adv. No. 82–2022A.**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Feb. 2, 1984.

Bernard Gerber, Atlanta, Ga., for debtor.

J. Lansing Kimmey, Atlanta, Ga., for defendant.

## OPINION

WILLIAM L. NORTON, Jr., Bankruptcy Judge.

The Chapter 13 debtor filed a complaint to avoid a lien on his automobile pursuant to 11 U.S.C. § 522(f)(2). The debtor characterized the lien as a non-possessory, non-purchase money lien on a tool of the trade. The creditor has disputed the tool of the trade characterization of the property to which the lien attaches. Because this court finds (1) that creditor's lien is a non-purchase money lien, (2) that the traveling-salesman debtor's automobile qualifies as a tool of the trade, and (3) that the creditor's lien impairs an exemption to which the debtor is entitled, the avoidance is granted.

## FINDINGS OF FACT

1. On June 18, 1982, the plaintiff filed his Chapter 13 petition, scheduling a $5,275.00 exemption in a 1979 Peugeot;

2. On July 29, 1982, defendant filed a proof of claim as a secured creditor;

3. Attached to defendant's proof of claim were the following exhibits:

(a) Consumer Collateral Installment Note in the amount of $10,000.00 ($13,085.28 with interest), for one 1979 Peugeot, one 1978 Peugeot, and one Kawai piano, executed October 16, 1981;

(b) Security Agreement ("Consumer Goods or Equipment") in the amount of $13,085.28, listing a security interest in one 1978 Peugeot, one 1979 Peugeot, and one Kawai piano executed October 16, 1981;

(c) State of Georgia Certificate of Title issued April 15, 1980, for one 1979 Peugeot, purchased January 1980 with a first lien held by defendant;

(d) State of Georgia Certificate of Title issued October 28, 1980, for one 1978 Peugeot, purchased May 16, 1980, with a first lien held by defendant;

(e) Financing Statement showing defendant as a holder of a security interest in one Kawai piano, filed October 31, 1979;

(f) Uniform Commercial Code Pledge of Collateral for one 1978 Peugeot, executed May 16, 1980;

4. On August 10, 1982, plaintiff filed a complaint to avoid the debtor's lien on the 1979 Peugeot;

5. Defendant filed a timely answer to which defendant attached a Consumer Motor/Vehicle Note—Security Agreement, showing financing of a new 1979 Peugeot in the amount of $9,479.00 ($12,174.24) with interest, executed January 29, 1980, and marked "Paid By Renewal October 21, 1981" along with a duplicate copy of the Georgia Certificate of Title for the 1979 Peugeot;

6. The market value of the automobile was approximately $5,275.00 at the time the Chapter 13 petition was filed;

7. Plaintiff is an outside traveling salesman who regularly travels north Georgia and the adjacent counties to and including Atlanta.

## DISCUSSION

The defendant-creditor challenges plaintiff-debtor's ability to avoid defendant's lien for three reasons: (1) defendant's lien is a purchase money lien and therefore lien avoidance under § 522(f)(2) is not available; (2) the automobile which plaintiff seeks to avoid cannot be classified as a tool of the trade and, therefore, § 522(f)(2)(B) does not apply; and (3) plaintiff as a Chapter 13 debtor is not entitled to the avoidance provision within § 522.

### Non-Purchase Money Lien

■ This court rejects defendant's argument that its lien was a purchase money lien at the time plaintiff filed his Chapter 13 petition. The documents which the creditor has submitted do not support the purchase money classification. The original

note executed January 1980 in the principal amount of $9,479.00 appears to have been a purchase money note. That transaction between the debtor and the creditor came within the definition of the Uniform Commercial Code for a "purchase money security interest," e.g., the bank loaned the debtor money for the debtor to purchase a 1979 Peugeot which the debtor did in fact purchase.[1] Ga.Code Ann. § 109A–9–107 (Harrison, 1979) [currently OCGA § 11–9–107 (Michie, 1982)].

■ This original note, however, was refinanced on October 21, 1981. The "renewal"[2] note gave the debtor new value. The principal amount loaned on the new note was $10,000.00, and in addition to the retained security interest in the 1979 Peugeot, the defendant was given a security interest in a 1978 Peugeot and a Kawai piano. The defendant has submitted no documents evidencing that the 1978 Peugeot and Kawai piano were also purchase money loans to plaintiff. Thus, (1) the increased principal given to the debtor and (2) the additional security given to the creditor are each elements that individually destroy the purchase money character of the original agreement. *In re Ward,* 14 B.R. 549, 553 (D.C.S.D.Ga.1981) (adopting the holding of the Bankruptcy Court: "[the subsequent] loan contract provided more security ... than the original contract, introduced a new security agreement, (advanced new sums to the debtor), increased the amount financed by approximately $700.00 and increased the total of the Debtors' payments by more than $1,000.00."); *In re Slater,* 19 B.R. 954, 955 (Bkrtcy.D.Md.1982) (citing with approval the *Ward* analysis that subsequent "security agreements entirely superseded the initial security agreement" and was a "novation." "This is particularly the case when, in this instance, the refinanced loan not only paid off a pre-existing note but

1. Definitions: "Purchase money security interest"—

A security interest is a "purchase money security interest" to the extent that it is—

(b) taken by a person who by making advances or incurring an obligation gives value to

enable the debtor to acquire rights in or the use of collateral if such value is in fact so used.

2. "Renewal" is a misleading characterization. For a helpful summary on the meaning of "renewal" *see In re Ward,* 14 B.R. 549, 553 at n. 1 (D.C.S.D.Ga.1981), and cases cited therein.

also advanced additional cash to the debtor.").

### Tool of the Trade

Defendant next contends that plaintiff cannot avoid its lien because an automobile does not fit within the definition of "tool of the trade." Briefly, the argument for this proposition generally focuses on the exclusion or omission of motor vehicles from the avoidance portion of the statute.[3] This omission is contrasted with the separate categories for motor vehicles and tools of the trade that appear in the exemption portion of the statute. From this omission the inference is drawn that the Congress or other legislative body did not intend to authorize lien avoidance on motor vehicles. *In re Sweeney,* 7 B.R. 814, 818–19 (Bkrtcy. E.D.Wis.1980); *Curry v. Dial Finance Corp.,* 18 B.R. 358, 359 (Bkrtcy.N.D.Ga.1982).

■ This court does not accept such an inference. Less attention to the intention of the legislators and more attention to a literal reading of the statute, which reveals that automobiles did not appear as a category in § 522(f), suggests that the legislators refused to allow debtors to avoid liens on all automobiles. From this it does not follow, however, that in circumstances where the debtor could show that his automobile functioned integrally as a "tool of the trade," the debtor was precluded from using the lien avoidance procedure. Moreover, concern that debtors will succeed in stretching the definition to fit all manner of uses is unwarranted. As long as courts fulfill their role of reviewing the specific circumstances in deciding whether the use is integral to the debtor's occupation at the time of filing, abuse will be prevented. Already courts have denied lien avoidance where the evidence showed that the connection between the debtor's occupation and his automobile was for transportation to and from work. *In re Damron,* 5 B.R. 357 (Bkrtcy.W.D.Ky.1980); *In re Moss,* 34 B.R. 395 (Bkrtcy.D.Or.1983).

A better approach to defining the phrase "tool of the trade" is a functional one which requires the court to inquire into the particular facts to answer the questions (1) what is the debtor's trade and (2) whether the item sought to be avoided is integral to his trade. Thus, "[t]he description of an object as a 'tool' is a classification based upon that object's functional and utilitarian purpose in the hands of its owner or user." *In re Dubrock,* 5 B.R. 353, 355 (Bkrtcy.W.D.Ky. 1980). *See also In re Currie,* 34 B.R. 745, 478 (Bkrtcy.D.Kan.1983); *In re Dillon,* 18 B.R. 252, 255 (Bkrtcy.E.D.Cal.1982); *In re Eagan,* 16 B.R. 439, 441 (Bkrtcy.E.D.N.Y. 1982). Such an approach allows the useful concept "tool of the trade" to remain a viable one by allowing for incorporation of the new advances in a society making rapid technological/mechanical changes.

In the context of a tool of the trade exemption, this court must be guided by the state law exemption scheme because Georgia has opted out of the federal Title 11 U.S.C. exemption provision. The Georgia exemption scheme available to a debtor filing a bankruptcy petition is similar to the federal one, e.g., there is a tool of the trade exemption that is separate from the motor vehicle exemption.[4] Within recent time no Georgia state court has interpreted "tool of

---

**3.** 11 U.S.C. § 522(d) The following property may be exempted under subsection (b)(1) of this section:

    (2) The debtor's interest, not to exceed $1,200 in value, in one motor vehicle.

    (6) The debtor's aggregate interest, not to exceed $750 in value, in any implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor.

**4.** Ga.Code Ann. § 51–1301.1 (Harrison, Supp., 1981) [currently OCGA § 44–13–100 (Michie, 1982)] *Alternative Exemption*

    (a) In lieu of the exemption provided in sections 51–1301 or 51–101, any debtor who is a natural person may exempt, pursuant to this Chapter, for purposes of bankruptcy, the following property:

    (3) The debtor's interest, not to exceed the total of $1,000 in value, in all motor vehicles; and

    (7) The debtor's aggregate interest, not to exceed $500 in value, in any implements, professional books, or tools of the trade of the debtor or the trade of a dependent of the debtor.

the trade" in the exemption section.[5] Many of the Georgia decisions were rendered prior to the more modern mechanical or technological age we now live in. We must recognize that trades and uses of implements may change and evolve, and prior definitions and concepts must be revised to be consistent with technological or trade changes and uses. This court does not find that the rational approach requiring a functional analysis of the definition "tool of the trade" based on the particular facts before the Court would be rejected by the state courts of Georgia.

In the instant circumstances, plaintiff is an outside traveling salesman who travels north Georgia and the adjacent counties to and including Atlanta. The essence of such an occupation is the "travel." Accordingly, plaintiff's automobile is integral to his occupation. *See Dubrock, supra,* at 354 ("Sales managers, an insurance adjuster, and various trade workers have also been deemed sufficiently in need of a vehicle to carry on their professions so as to permit their car to be considered a tool of their trade." [Citations omitted]. Dubrock himself was a salesman of real estate).

### § 522 Exemptions/Avoidance

This court rejects the defendant's contention that a Chapter 13 debtor is entirely precluded from using the avoidance provisions of § 522. This court recognizes that decisions on this point have not been uniform. *See In re Cook,* 26 B.R. 187 (D.C. D.N.M.1982); *Baldwin v. Avco Financial Services,* 22 B.R. 507 (D.C.D.Del.1982); *In re Rasmus,* 34 B.R. 9 (Bkrtcy.M.D.Fla.1983); *In re Lantz,* 7 B.R. 77 (Bkrtcy.S.D.Ohio, 1980); *In re Mitchell, (Mitchell v. Finance One of America),* 25 B.R. 406 (Bkrtcy.N. D.Ga. Nov. 16, 1982); *But cf. In re Aycock,* 15 B.R. 728 (Bkrtcy.E.D.N.C.1981). In this Court's view, the provisions of Chapters 1, 3, 5 apply equally to each operative Chapter 7, 11, and 13, except where a provision of one of the operative chapters makes a Chapter 1, 3, or 5 provision inapplicable, inconsistent or inappropriate within the statutory framework. Those who argue against 11 U.S.C. § 103 making § 522 applicable in a Chapter 13 case have a heavy burden in view of the literal language of the statute: "Chapters 1, 3 and 5 of this Title apply in a case under Chapter 7, 11 or 13 of this Title." In this court's opinion, they have not carried their burden. Section 522(f) is applicable to Chapter 13 cases.

Nevertheless, a debtor pursuant to § 522(f) is permitted to avoid liens only "to the extent that such lien impairs an exemption to which the debtor would have been entitled . . .". In the instant circumstances, the automobile was valued at $5,275.00 at the time the debtor filed his Chapter 13 petition. Pursuant to 11 U.S.C. § 506(a), the creditor could not be secured for more than that amount. The debtor sought to exempt that total amount by aggregating certain exemptions permitted under the Georgia exemption statute.[6] While it is unclear exactly how much was owed to defendant on the 1979 Peugeot at the time of bankruptcy filing, it is clear that whatever amount defendant's lien was, it would

---

5. Indeed, *Burt v. Stocks Coal Co.,* 119 Ga. 629, 46 S.E. 828 (1904) is the most recent case in which the state courts of Georgia have addressed the meaning of the phrase " 'common' tools of the trade."

6. Ga.Code Ann. § 51–1301.1 (Harrison, Supp., 1981) [currently OCGA § 44–13–100 (Michie, 1982)]
  (a) In lieu of the exemption provided in sections 51–1301 or 51–101, any debtor who is a natural person may exempt, pursuant to this Chapter, fore purposes of bankruptcy, the following property:
  (1) The debtor's aggregate interest, not to exceed $5,000 in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence, in a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence, or in a burial plot for the debtor or a dependent of the debtor; and
  (6) The debtor's aggregate interest, not to exceed $400 in value plus any unused amount of the exemption provided under paragraph (1) of this subsection, in any property; and
  (7) The debtor's aggregate interest, not to exceed $500 in value, in any implements, professional books, or tools of the trade of the debtor or the trade of a dependent of the debtor.

impair the exemption to which the plaintiff was entitled.[7]

For the reasons set forth above, plaintiff's complaint to avoid the lien on his automobile is granted.

7. $5,275.00   Value of automobile
  –5,275.00   Debtor's exemption
  ——————
     –0–

Any amount above "0" would impair the debtor's exemption. (Creditor's lien becomes unsecured.)