In re Jesse C. JONES, a/k/a J.C. Jones, a/k/a Jack C. Jones, d/b/a J.C. Jones Farms, Debtor.

**SOUTH ATLANTIC PRODUCTION CREDIT ASSOCIATION, Movant,**

v.

**Jesse C. JONES, a/k/a J.C. Jones, a/k/a Jack C. Jones, d/b/a J.C. Jones Farms, Respondent.**

**Bankruptcy No. 86–20103–AMER.**

United States Bankruptcy Court, M.D. Georgia, Americus Division.

June 10, 1988.

Howard S. McKelvey, Jr., Crisp and Oxford, P.A., Americus, Ga., for movant.

Fife M. Whiteside, Columbus, Ga., for respondent.

G. Frank Nason, IV, Albany, Ga., for trustee.

## MEMORANDUM OPINION

JOHN T. LANEY, III, Bankruptcy Judge.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

The matter before the Court is the Debtor's cross motion to avoid liens on farm equipment held as security by South Atlantic Production Credit Association, hereinafter PCA, pursuant to 11 U.S.C. section 522(f). The motion was filed with the Debtor's response to PCA's motion for relief from stay. A hearing was held on November 12, 1987 on the motions, along with the motions for relief from stay of the Federal Land Bank of Columbia and the First National Bank of Atlanta. The Court granted the motions for relief from stay of the Creditors except as to the property which Debtor scheduled as exempt, the 1974 John Deere tractor, the 14 foot rotary Bush Hogg mower, and the Grain–O–Vator wagon, which were claimed as collateral by the PCA. The hearing on the motion to avoid liens was continued and was heard again on January 6, 1988 and February 18, 1988. The motion to avoid liens was then taken under advisement. The issues involved are (1) whether the Debtor may exempt farm equipment as tools of his trade under 11 U.S.C. section 522(f) if he does not meet the definition of "farmer" in section 101(19); (2) whether large items of farm machinery and equipment are tools of the trade under section 522(f)(2)(B); (3) whether liens on property purchased after the enactment of the Bankruptcy Code, but covered by after-acquired property clause in a security agreement pre-dating the Bankruptcy Code may constitutionally be avoided under the Supreme Court's decision in *U.S. v. Security Industrial Bank*, 459 U.S. 70, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982). Having considered the evidence presented at the hearings and the briefs submitted by the parties, the Court now makes the following Findings of Fact and Conclusions of Law.

The Debtor originally filed a petition under Chapter 11 on May 7, 1986. On September 29, 1987, he voluntarily converted his case to one under Chapter 7. The motion for relief from stay of PCA was filed on November 2, 1987, and the Debtor's response and cross-motion for lien avoidance at issue here was filed on November 10, 1987. The Debtor amended his schedules to claim the three farm implements as

exempt on November 12, 1987, the date of the first hearing on the motions.

The John Deere tractor was acquired by the Debtor in March, 1974. The Grain–O–Vator grain wagon was purchased in December, 1981, and the Bush Hogg mower was purchased in December, 1983. The Debtor testified that the Bush Hogg mower was not acquired with a trade-in of an earlier model Bush Hogg mower. The grain wagon has a current value of between $1,200 and $1,400, and the mower has a value of between $800 and $900. All three items together were valued by the Debtor at $5,000.00.

PCA has a perfected security interest in "[a]ll farm machinery and equipment, tractors, trucks and tilling and harvesting tools of every kind and description owned by Debtor(s). All irrigation machinery and irrigation equipment of every kind and description including pumps, traveler units, generators, ingines [sic], piping, fittings, and all other accessories....ALSO, ALL PROPERTY SIMILAR TO THAT HEREINABOVE DESCRIBED WHICH MAY AT ANY TIME HEREAFTER BE ACQUIRED BY THE DEBTOR(S) OR ANY OF THEM." PCA filed a financing statement on the equipment on May 25, 1977 in Sumter County, Georgia. PCA filed another financing statement on farm machinery on February 5, 1982, with attachments listing the equipment. It filed statements of continuation on the 1977 financing statement on February 5, 1982 and March 19, 1987, which stated that "The original financing statement between the foregoing debtor and secured party, bearing the file number shown above, is still effective."

PCA continuously advanced sums to Debtor throughout the course of their dealings. As of May, 1977 when the first financing statement was filed, PCA had advanced $950,000 as a line of credit to the Debtor. The balance of principal was continuously refinanced with additional amounts loaned. The Debtor also repaid portions of his principal balance each year. The Bankruptcy Code was enacted on November 6, 1978. At that time, Debtor's principal balance was $737,204.72. Debtor has paid more than that amount in principal since November, 1978. Debtor's lowest principal balance owed to PCA was $148,764.00 in 1979. Debtor has never completely paid off his debt to PCA.

Because of his financial troubles, Debtor is not farming at the present time and has not farmed since 1985. Some of his farmland has been sold, and some of it is leased to his son. Debtor farmed for 35 years before 1986. He owns a trucking operation from which he has derived his income since 1985. He does intend to farm again when he obtains financing, and he would need these items of farm equipment to farm again. The Grain–O–Vator wagon is needed for his hog operation. He testified that he might rent land to farm on in the future.

11 U.S.C. section 522(b)(1) allows a state to opt out of the federal scheme of exemptions. Georgia's list of exemptions is at O.C.G.A. section 44–13–100. O.C.G.A. section 44–13–100(a)(7) allows the Debtor to exempt his interest, "not to exceed $500.00 in value, in any implements, professional books, or tools of the trade of the debtor or the trade of a dependent of the debtor.'...." O.C.G.A. section 44–13–100(a)(6) allows the Debtor to exempt his interest, "not to exceed $400.00 in value plus any unused amount of the exemption provided under paragraph (1) of this subsection, in any property...." Section 44–13–100(a)(1) is the exemption for real property. 11 U.S.C. section 522(f) provides for the avoidance of liens:

"(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is ...

(2) a nonpossessory, nonpurchase-money security interest in any ...

(B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor...."

Debtor has claimed the three items of farm equipment as exempt by combining the exemption provisions of O.C.G.A. section 44–

13–100(a)(7) and (a)(6). He is attempting to avoid the liens on the equipment as a nonpossessory, nonpurchase money security interest in implements or tools of the Debtor's trade. The use of the "spillover" exemption of 11 U.S.C. section 522(d)(5), equivalent to O.C.G.A. section 44–13–100(a)(1), for the avoidance of liens in tools of the trade has been allowed by other courts. *In re LaFond*, 791 F.2d 623 (8th Cir.1986); *In re Falconer*, 79 B.R. 283 (W.D.Mich.1987).

■ The first question is whether the Debtor is eligible to exempt his tools and implements as those of his trade. The Debtor's exemption rights are determined on the basis of circumstances existing at the time of filing. *In re Brzezinski*, 65 B.R. 336, 339 (Br.W.D.Wis.1985). This case was filed in May, 1986. 11 U.S.C. section 101(19) defines a farmer as a "person that received more than 80 per cent of such person's gross income during the taxable year of such person immediately preceding the taxable year of such person during which the case under this title concerning such person was commenced from a farming operation owned or operated by such person...." 11 U.S.C. section 522(f)(2)(B) only requires that the Debtor "prove he is legitimately engaged in a trade which currently and regularly uses the specific implements or tools being exempted." *In re Yoder*, 32 B.R. 777, 781 (Br.W.D.Pa.1983). The Court is also to consider the intensity of the Debtor's past farming activities and the sincerity of his intentions to continue farming. *LaFond* at 626. Other sources of income do not prevent a debtor from having the trade of farming for purposes of lien avoidance. *Id.; Matter of Lipe*, 36 B.R. 597, 598–99 (Br.W.D.Mo.1983). For purposes of section 522(f), the Debtor does not have to prove that he meets the section 101(19) definition of farmer to exempt farm equipment as his tools of the trade. He only needs to prove that he is legitimately in the trade using those tools. *Matter of Decker*, 34 B.R. 640, 641 (Br.N.D.Ind.1983). Temporary abandonment of an occupation does not result in the loss of the exemption when the Debtor intends to resume the occupation. *In re Schuette*, 58 B.R. 417, 419–20 (Br.D.Minn.1986); *Decker* at 642. The Debtor here was a farmer for 35 years. He stated his intention to resume farming. These items of equipment are essential to the Debtor if he is to resume farming. The Court finds that the Debtor is a farmer for the purpose of claiming an exemption in farm implements and tools of the trade under O.C.G.A. section 44–13–100(a)(7) and for the purpose of avoiding PCA's lien under 11 U.S.C. section 522(f)(2)(B).

■ PCA has questioned whether 11 U.S.C. section 522(f)(2)(B) allows the avoidance of liens on large items of farm equipment as implements or tools of the trade of the Debtor. The majority of courts have held that large items of farm equipment are tools of the trade under section 522(f)(2)(B). *See, e.g., LaFond; In re Liming*, 797 F.2d 895 (10th Cir.1986); *Augustine v. U.S.*, 675 F.2d 582 (3rd Cir.1982); *In re Thompson*, 82 B.R. 985 (Br.W.D.Wis. 1988); *In re Yoder*, 32 B.R. 777 (Br.W.D. Pa.1983). "As a practical matter, a narrow construction punishes the farmer for being inadvertently dependent upon expensive tools of the trade as compared to other trades more dependent on smaller hand tools." *Middleton v. Farmers State Bank of Fosston*, 41 B.R. 953, 955 (D.Minn.1984). "Congress could not have been totally unaware of the fact that many "tools" or "implements" of the trade are more expensive than ordinary household goods. The literal meaning of the tools of the trade subsection indicates an intention to allow avoidance of liens on large farm implements and tools, items necessary to a debtor-farmer's new beginning." *LaFond* at 627. Other cases, mostly older cases, construed the lien avoidance provision narrowly and restricted the exemption to hand tools and small implements of nominal resale value. *See, e.g., In re O'Neal*, 20 B.R. 13 (Br.E.D.Mo.1982); *In re Yparrea*, 16 B.R. 33 (Br.D.N.M.1981). *See also In re Harrell*, 72 B.R. 107 (Br.N.D.Ala.1987) (which involved exemption of a truck as a tool of the trade).

The equipment must be exempt as a tool of the trade under the state's exemption

laws for the lien on it to be avoided under 11 U.S.C. section 522(f)(2)(B). *In re Taylor*, 73 B.R. 149, 152, 15 B.C.D. 1261, 1263 (Br.D.Mont.1987); *Matter of Schneider,* 37 B.R. 747, 750 (Br.N.D.Ga.1984). Georgia cases on the subject have held that "common tools of the trade" are small manual instruments. *Burt v. Stocks Coal Co.*, 119 Ga. 629, 629–30 (1904); *Kirksey v. Rowe*, 114 Ga. 893, 895 (1902). However, *Burt* is the most recent case on the meaning of "tools of the trade" from the Georgia state courts, and it was decided in 1904. The current Georgia statute does not contain the modifier "common" before "tools of the trade." Therefore, these cases are not necessarily indicative of the meaning of the current statute and no reported Georgia case has discussed the meaning of "tools of the trade" in said statute. In *Matter of Schneider,* Judge Norton of the Bankruptcy Court for the Northern District of Georgia held that a salesman's automobile could be a tool of the trade. *Schneider* at 751. He explains that,

"Many of the Georgia decisions were rendered prior to the more modern mechanical or technological age we now live in. We must recognize that trades and uses of implements may change and evolve, and prior definitions and concepts must be revised to be consistent with technological or trade changes and uses. This court does not find that the rational approach requiring a functional analysis of the definition "tool of the trade" based on the particular facts before the Court would be rejected by the state courts of Georgia." *Id.*

That case differed from Judge Kahn's decision in *Matter of Curry*, which held that a truck could not be a tool of the trade under Georgia law based on the early Georgia decisions. *Matter of Curry*, 18 B.R. 358, 359, 8 B.C.D. 1109, 1110 (Br.N.D.Ga.1982).

■ This Court agrees with the decision in *Matter of Schneider*. What can be considered a tool or implement has changed since 1904. Section 522(f)(2)(B) contains no value limitation on value. *In re Liming*, 797 F.2d 895, 901 (10th Cir.1986). "The tools of the trade subsection was intended to allow avoidance of liens on large farm

implements and tools necessary to a debt-or-farmer's new beginning." *In re La-Fond*, 791 F.2d 623, 627 (8th Cir.1986). The Debtor will be permitted to exempt and avoid the lien on the large items of farm equipment at issue here. He is permitted to combine his $500.00 exemption for tools of the trade in O.C.G.A. section 44–13–100(a)(7) with his "wild card" exemption in section 44–13–100(a)(6) of $5,400. *See Augustine v. U.S.*, 675 F.2d 582, 586 (3rd Cir.1982) (which interpreted the similar exemptions in 11 U.S.C. sections 522(d)(5) and (6).)

PCA contends that because its original lien on the Debtor's farm equipment attached and was perfected prior to the enactment date of the Bankruptcy Code, the retroactive application of section 522(f) to its lien would violate the due process clause of the Fifth Amendment. It contends that, because of its after-acquired property clause in its original security agreement, the items purchased after the enactment of the Bankruptcy Code are not subject to lien avoidance along with the items purchased before the Enactment date, which would not be subject to lien avoidance under *United States v. Security Industrial Bank*, 459 U.S. 70, 103 S.Ct. 407, 784 L.Ed. 2d 235 (1982). The enactment date of the Bankruptcy Code was November 6, 1978. The tractor was acquired in 1974. The other two items of equipment were acquired in 1980 and 1981. New notes were given and PCA's exhibit 1 from the February 18 hearing states that the debt was refinanced, although the notes themselves are not in evidence. The original UCC–1 financing statement, filed May 22, 1977, stated that it applied to all machinery and equipment of the Debtor. Statements of continuance were filed on the financing statement on February 5, 1982 and March 19, 1987. The second financing statement was filed on February 5, 1982. Its attachments listed these specific items of equipment, along with many others. A statement of continuance was filed on it on January 26, 1987.

■ The United States Supreme Court indicated in *United States v. Security In-*

*dustrial Bank* that 11 U.S.C. section 522(f)(2) may not be applied retroactively to destroy property rights that existed before the Bankruptcy Code was enacted. *Security Industrial Bank* at 78, 103 S.Ct. 407, 412, 74 L.Ed.2d 235 (1982). Courts have held that section 522 may be applied to a security interest on a loan made prior to the enactment of the Bankruptcy Code if a new security interest is created by a novation after the enactment date. *Matter of Ward*, 14 B.R. 549, 554 (S.D.Ga.1981); *In re Slater*, 19 B.R. 954, 955 (Br.D.Md.1982); *In re Alston*, 11 B.R. 184, 187, 7 B.C.D. 894, 896 (Br.W.D.Tenn.1981). *See also, First National Bank & Trust Co. v. Daniel*, 701 F.2d 141 (11th Cir.1983) (in which the Eleventh Circuit Court of Appeals held that a new note did not constitute a novation and therefore the pre-Code lien could not be avoided.) Even without any refinancing, the Debtor can properly avoid the PCA lien on the two items of equipment purchased after the enactment of the Bankruptcy Code, despite the after-acquired property clause. *In re Zweibahmer*, 25 B.R. 453, 455 (Br.N.D.Iowa 1982); *In re Gibson*, 16 B.R. 257, 271 (Br.D.Kan.1981). The liens could not attach before the property was acquired. *Zweibahmer* at 457; *Gibson* at 271. The fourteen foot rotary Bush Hogg mower and the Grain–O–Vator grain wagon were acquired by the Debtor after the enactment of the Bankruptcy Code, and he can avoid PCA's liens on those items of equipment.

The question that remains is whether the lien on the John Deere tractor can be avoided. If the new notes and security deed constitute a novation, then the lien on the tractor can be avoided. If there was no novation the lien cannot be avoided. *First National Bank & Trust Co. v. Daniel*, 701 F.2d 141, 142 (11th Cir.1983). Georgia law is used to determine whether there is a novation. *See Matter of Ward*, 14 B.R. 549, 553 (S.D.Ga.1981). Under Georgia law, a novation "has four essential requisites: (1) a previous valid obligation, (2) the agreement of all the parties to the new contract, (3) the extinguishment of the old contract, (4) the validity of the new one." *Farris v. Pazol*, 166 Ga.App. 760, 305 S.E.

2d 472, 473–74 (1983). While the status of a note as a renewal of another note or a novation depends upon the intention of the parties, the new note must contain the same obligation to be a renewal. "There may be an increase of security, but there is no renewal unless the obligation is the same.... If the obligation changes, there can be no renewal, because there can be no such thing as the re-establishment of an old obligation by the creation of a new obligation different in character." *King v. Edel*, 69 Ga.App. 607, 26 S.E.2d 365, 369 (1943). *See also American Surety Co. of N.Y. v. Garber*, 114 Ga.App. 532, 151 S.E. 2d 887, 888 (1966). This Court has held that the refinancing of a promissory note and security interest with an increase in the debt by the advancing of additional cash extinguishes the old obligation and creates a novation under Georgia law in purchase money security interest cases. *In re Starkey*, Case No. 88–10108–ALB (Br.M.D.Ga. May 27, 1988); *Matter of Franklin*, 75 B.R. 268, 271 (Br.M.D.Ga. 1986). *See also Ward* at 552. The Eleventh Circuit Court of Appeals found in *Daniel* that the new note was for the same indebtedness and therefore did not constitute a novation. *First National Bank & Trust Co. v. Daniel*, 701 F.2d 141, 142 (11th Cir.1983).

Bankruptcy courts in other jurisdictions have found fact situations similar to this one to constitute a novation. In the *Schneider, Carnes* and *Alston* cases, refinanced debts with new notes and security agreements and with cash advances were extinguished and new debts created. The liens on these debts that were refinanced after the enactment date of the Bankruptcy Code could be avoided under section 522(f)(2)(B). *In re Schneider*, 18 B.R. 274, 8 B.C.D. 1084 (Br.D.N.D.1982); *In re Carnes*, 8 B.R. 599 (Br.W.D.Okla.1981); *In re Alston*, 11 B.R. 184, 7 B.C.D. 894 (Br.W. D.Tenn.1981). *But see In re Zweibahmer*, 25 B.R. 453, 457 (Br.N.D.Iowa 1982) and *In re Gibson*, 16 B.R. 257, 263 (Br.D.Kan. 1981) (in which the courts found no intent to create a novation, despite new notes and security agreements.) Since the refinanc-

ing agreements were entered into after the enactment date of the Bankruptcy Code, the creditor had notice of section 522(f) at the time of the refinancing. *Alston* at 187. Notice to the creditor of the potential application to its lien of the newly enacted law is what is constitutionally required. *See Matter of Keller*, 29 B.R. 91, 92 (Br.M.D. Fla.1983).

The Court finds that PCA's refinancing of the debt along with the advancing of additional sums that increased the debt and the new notes and security agreements extinguished the Debtor's old obligation and created a novation. Since the new obligation on the tractor was created after the enactment of the Bankruptcy Code, and the other two items of equipment were originally acquired by the Debtor after the enactment of the Code, the Debtor may exempt these items under O.C.G.A. sections 44–13–100(a)(6) and (7), and he may avoid the lien on the farm equipment under 11 U.S.C. section 522(f)(2)(B).

An order in accordance with this Memorandum Opinion will be entered separately.

## ORDER

In accordance with the Memorandum Opinion issued this day,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED;

That the security interest of the Respondent South Atlantic Production Credit Association in the 1974 John Deere 2630A tractor, the 14 foot rotary Bush Hogg mower, and the Grain–O–Vator 1020 grain wagon of the Movant Debtor, Jesse C. Jones, is avoided pursuant to 11 U.S.C. section 522(f)(2)(B), and

That the Debtor shall be permitted to retain those items of farm equipment as exempt tools of his trade under O.C.G.A. sections 44–13–100(a)(6) and (7), free of South Atlantic Production Credit Association's avoided security interest.